583 A.2d 265

**STATE of Maryland**

v.

**John POOLE.**

No. 125, Sept. Term, 1988.

Court of Appeals of Maryland.

Jan. 4, 1991.

---

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Thomas K. Swisher (Russell J. White, White & Karceski, all on brief), Towson, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE,* RODOWSKY, McAULIFFE, ADKINS ** and BLACKWELL,** JJ.

COLE, Judge.

We are asked to resolve two issues in this case: (1) whether the trial court was bound by the terms of a written plea agreement and (2) whether Maryland Rule 4–243(d) requires the trial court to record all chambers conferences at which plea agreements are discussed.

John Poole was charged in a 28 count indictment in the Circuit Court for Washington County for various narcotic offenses. Poole entered into a written plea agreement with the State whereby he would plead guilty to two counts of distributing cocaine and to two counts of maintaining a common nuisance. In return, the State agreed to enter a *nolle prosequi* as to all remaining counts. The State further agreed to recommend to the court, for approval, the imposition of a thirty year sentence, with twenty years suspended, five years probation upon the defendant's release (subject to certain conditions), forfeiture of his pick-up truck, forfeiture of $10,000.00 to the State on or before April 14, 1987, and Poole's cooperation in supplying information concerning criminal activity of which he was aware. The plea agreement also provided that Poole would be continued on bail pending completion of a pre-sentence investigation.

On March 5, 1987, the parties held an off the record chambers conference to discuss the plea agreement. Following this discussion, both counsel prepared sentencing guideline worksheets for the trial judge, which were presented to him at a bench conference. Later that day, the

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Adkins and Blackwell, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; but did not participate in the decision and adoption of this opinion.

case was called for a hearing in open court. After withdrawing his not guilty plea and stating his intention to plead guilty to 4 of the 28 counts, Poole was examined by the court on the issue of whether his plea was given voluntarily. The court advised the defendant that, if convicted, based on his guilty plea to the charges of distribution of cocaine and maintaining a common nuisance, he could receive up to 80 years imprisonment and a fine up to $100,000. When asked by the judge if he understood, Poole responded that he did.

The Court attempted to put the plea agreement on record, but the parties objected and requested a bench conference, the pertinent part of which is set forth as follows:

MR. NORMAN [Assistant State's Attorney]: Just ask him, Your Honor, if he's read every single portion of the plea agreement which you have before you.

THE COURT: There's certain inducements or enticements for you to plead guilty ...

MR. NORMAN: Right, if he understands. Other than what's contained ...

THE COURT: Is this going to go in the record?

MR. NORMAN: No.

MR. HASSETT [Defense Counsel]: I think what he wants to do is submit this to you, Judge, because there are some provisions obviously that ...

\* \* \* \* \* \*

MR. HASSETT: I think Andrew has an appropriate way of putting it on the record.

THE COURT: Alright. Then you put it on the record. You mean you want to put it on the record?

MR. HASSETT: No, no. He's got an appropriate way of placing it ...

MR. NORMAN: I think all you need to do, Your Honor, is ask him, tell him you have a written plea agreement in front of you which is five pages long, and ask him, say, your signature appears to be on the last page.

THE COURT: Okay.

Accordingly, the Court engaged in the following colloquy with the defendant regarding the plea agreement:

THE COURT: Mr. Poole, I am advised by the attorneys in this case that the plea agreement that has been entered into between the Defendant and the State has been reduced to writing. I understand that that plea agreement which I just examined and read is there in your attorney's hand and it appears to be your signature on that agreement. Would you please examine that and tell me if that is your signature?

DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Look at that plea agreement and tell me whether or not you have been over that with your attorney.

DEFENDANT: Yes, Sir, I have.

THE COURT: Is there anything in there that you don't understand?

DEFENDANT: No, Your Honor.

THE COURT: Mr. Hassett, are you satisfied that your client does understand the provisions of that plea agreement?

MR. HASSETT: I am, Sir.

THE COURT: And you've been over those provisions with him, item by item?

MR. HASSETT: Your Honor, I would state for the record I think I have thoroughly reviewed this document with my client and I believe that he understands every provision in this plea agreement.

THE COURT: Mr. Poole, what I want to ask you is, *is there anything else,* and I want it stated on the record if there is, or not, whatever the situation is, I want it stated on the record, *is there anything else* that has happened, whether anybody, a policeman, a prosecutor, an attorney, a non-attorney, a judge, anyone, has made any promise to you or any inducement or any enticement whatsoever, other than what is contained in that written plea agree-

ment in order to encourage you or get you to enter these pleas of guilty to these four charges?

DEFENDANT: No, Your Honor, that's it.

(emphasis supplied).

Satisfied that the defendant's guilty plea was voluntarily given, and having heard the statement of facts, the court accepted the defendant's guilty plea and the following discussion ensued:

THE COURT: Based upon the pleas of guilty and based upon the agreed statement of facts, the Court will enter a verdict of guilty on Counts Six, Nineteen, Twenty one and Twenty–Two of the charging document.

It is my understanding that both sides are requesting that the court do a presentence investigation.

MR. NORMAN: That's correct, Your Honor.

MR. HASSETT: That's correct. Your Honor, as far as a disposition date is concerned ...

THE COURT: It generally takes about six weeks.

MR. NORMAN: Your Honor, may we approach the bench on that?

THE COURT: Alright.

(Whereupon, counsel approached the bench and the following discussion took place out of the hearing of those present in the courtroom).

THE COURT: *I'll go along with most of these provisions but there's no way I'm going to release him.*[1]

MR. NORMAN: Oh, Judge!

THE COURT: What's he supposed to be released for?

MR. NORMAN: *Because he's cooperating with us in the meantime.*

MR. HASSETT: Judge, that's a real important part of this. I can assure you his bail is very high. (emphasis supplied.)

---

1. This case had received so much publicity that the press was in attendance at this hearing. The judge conveyed the fact that he did not "want the press ... to think I'm going soft on him."

At the conclusion of the hearing, the court ordered the plea agreement to be sealed and the defendant continued on bail.

On April 16, 1987, all parties appeared before the trial judge for sentencing. The court advised defense counsel that after reviewing the plea agreement (and presumably the presentence investigation report), it had decided not to be bound by the agreement. The judge then gave the defendant an opportunity to withdraw his guilty plea. Thereupon, defense counsel took exception to the court's ruling and offered his recollection of the events leading to the entry of the defendant's guilty plea. He maintained that the court had bound itself to the plea agreement based on an off the record conference that took place in the judge's chambers prior to the hearing on March 5th:

MR. HASSETT: My recollection of the events is quite simply Mr. Norman and I appeared in your Chambers and submitted a written plea agreement to you at that time. We had some discussion. I remember your initial reaction was you didn't feel the contemplated amount of incarceration was enough. It is my recollection that you countered with a figure of fifteen years. I do remember that you read the plea agreement. As a matter of fact, the initial written plea agreement was submitted to you and I do recollect that you made a correction in the document regarding our wording about a particular provision.

I also recall that, not only did the discussion include the three of us, but it did also include Mr. Long, who is the State's Attorney, by way of a telephone call.

I remember you expressing concern about the case. Mr. Norman and I left your chambers, got together along with a person whose name I do not know in the bar library and worked up a guideline sheet. I remember we presented that information to you while you were on the bench, I think in the midst of a jury trial for someone from the detention center out there who was charged with assault with intent to maim. I recollect that was a pretty quick jury verdict in that case, and I remember we

presented the information to you and you said, I will accept the ten years.

Once that was conveyed to me, I conveyed that to my client. I believe, and I think the law supports, you, in effect, bound yourself to the terms of this plea agreement.

Defense counsel also proffered that the defendant had fully complied with the terms of the plea agreement. The Assistant State's Attorney agreed with defense counsel's presentation of the facts, and confirmed defense counsel's proffer regarding Poole's fulfillment of his obligations under the agreement. The trial court, however, offered a different understanding as to what transpired during the chambers conference:

THE COURT: Alright. I told you in Chambers when this plea agreement was presented to me, and I looked at it, that I thought it was inappropriate. I called the State's Attorney in your presence and talked to him about it, and I did, as you indicate, mention an alternative suggestion.

Mr. Hassett, in outlining the facts, or your proffer of the facts and your recollection of them, you have overlooked the fact that you wanted it understood by the Court that if I disapproved or rejected the plea agreement, that your client would have the opportunity to withdraw the pleas of guilty that he would enter, and I gave you that assurance, that if the Court rejected the plea agreement that he would be afforded the opportunity to withdraw the pleas of guilty which it was anticipated he was going to enter.

Secondly, I think you have overlooked the fact, and apparently Mr. Norman has as well, that there was to be a presentence investigation and the Court did not indicate, as you have said, that, under all circumstances, that the plea bargain that the Defendant and the State entered into would be approved.

Defense counsel again proffered that the parties had relied on the plea agreement, and had proceeded accordingly. He stated:

both counsel and my client entered into this with the understanding that this was a firm agreement on the part of the Court, and, quite frankly, he would never have done the things that he was asked to do in the plea agreement had there been any divurgence [sic] of view about that.

Nevertheless, the court rejected the plea agreement and gave the defendant the option to withdraw his guilty plea or stand by the plea as entered.

In light of the court's ruling, defense counsel withdrew the defendant's guilty pleas and requested a jury trial. Poole was later convicted and sentenced to two twenty-year concurrent terms for distribution of cocaine and a twenty-year consecutive term for maintaining a common nuisance. The defendant appealed.

On appeal, Poole complained that the trial judge bound himself to the sentencing recommendation and accepted his guilty plea pursuant to the plea agreement, as confirmed by the off the record chambers and bench conferences. The State, however, contended that the plea agreement was not conditioned upon the court's acceptance of the recommended sentence and therefore, the court was not bound. The Court of Special Appeals disagreed and reversed.

The intermediate appellate court held that the dispute concerning what was said off the record supported resolution in favor of the defendant based on the trial court's error in permitting a critical communication, bearing on his intention to accept or reject the plea agreement or to defer his decision, to be conducted off the record. *Poole v. State,* 77 Md.App. 105, 549 A.2d 417 (1988). Moreover, the court concluded that any agreements reached following discussions held off the record, regarding whether the court intended to accept, reject or defer a decision on the plea agreement, should have been, at least, summarized on the record. We granted the State's Petition for Certiorari to address the important issues raised.

I

 The State contends that the trial court was not bound by the prosecutor's recommendation for a ten year sentence because the defendant's guilty plea was not solely dependent upon the court's acceptance of the recommended sentence. It maintains that even though the prosecutor concurred with defense counsel's assertion that the trial judge had agreed to be bound by the recommended sentence, this stipulation alone was not sufficient to overcome the court's denial that it had done so. Furthermore, the State continues, the Court of Special Appeals erred in ruling that the parties proceeded under Rule 4–243(a)(6), thereby binding the court, and not subsection (a)(5) of Rule 4–243.[2]

Poole argues that because he and the State submitted recommendations in the plea agreement to the court for its approval, the proceedings were governed by Rule 4–243(a)(6) and, therefore, the provisions of Rule 4–243(c)(1)[3] apply. Under the latter section, if the trial court was deferring its decision on whether to accept the terms of the

---

2. Rule 4–243. **Plea Agreements**
 (a) **Conditions for Agreement.**—The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition, including one or more of the following:

 * * * * * *

 (5) That the State's Attorney will recommend, not oppose, or make no comment to the Court with respect to a particular sentence, disposition, or other judicial action;
 (6) That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.

3. (c) **Agreements of Sentence, Disposition, or Other Jurisdictions.—**
 (1) **Presentation to the Court.**—If a plea agreement has been reached pursuant to subsection (a)(6) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.

agreement until it had reviewed a presentence or other report, the trial court was duty bound to advise the defendant and his counsel. It could not remain silent and indecisive and allow the defendant to comply with critical terms of the agreement to his detriment. The trial court was under an affirmative duty to advise the defendant that, if it had not approved the agreement, something else remained to be done.

The core of Poole's complaint centers around whether the trial judge accepted or approved the sentence recommended in the plea agreement or merely gave assurances that if the plea agreement was rejected, the defendant would be given the opportunity to withdraw his guilty pleas. The trial judge denied having ever agreed to be bound by the recommended 10 year sentence. In view of this dispute between the court, defense counsel, the state's attorney and the defendant and because there is no record dispositive of the issue, we look to the conduct of the parties.

We distill from the argument of counsel and the comments by the judge that there was agreement upon certain facts: the State and the defendant had agreed that the defendant would plead guilty to 4 of 28 counts of an indictment; in return the State would recommend a maximum sentence of 30 years of which the defendant would serve only 10 years, after which he would be released on 5 years probation; meanwhile, the defendant was to forfeit his automobile, forfeit $10,000 by April 14, 1987 and cooperate as an informant in the prosecution of certain criminals and a police officer. The State and defense counsel agreed that the defendant was to be continued on bail until the sentence was imposed.

Furthermore, the parties substantially agreed that the following discussions took place. Both counsel insisted upon keeping the plea agreement off the record, apparently to enable the State to conduct its ongoing investigation of illegal narcotics activity and also to protect the life of the defendant during the period his cooperation was being enlisted and thereafter. To this end, both counsel went to

the trial judge's chambers on March 5, 1987, prior to the hearing in open court, and submitted the plea agreement to the judge for his approval. The length of the sentence seems to have been the principal bone of contention, in that the judge thought a sentence of 10 years was too short and perhaps 15 years would be more appropriate. Apparently the judge sought reassurance from the State's Attorney himself, whom he called to discuss the plea agreement. The trial judge's concern regarding the proposed length of incarceration prompted both counsel to draw up sentencing guidelines for his consideration. These were presented to the court at the bench prior to the hearing in open court. Based on the court's response to these guidelines, Poole's attorney advised him that the judge had approved the sentence of 10 years.

Later that day and in open court, Poole formally changed his plea from not guilty to guilty to the four counts. The court verified the fact that some concessions by the State had induced his plea of guilty by asking the defendant in its inquiry on voluntariness whether Poole had been promised "anything else" to induce the new plea. Defense counsel suggests that based on Poole's belief that the judge had approved the recommended sentence, Poole responded negatively. When asked whether he understood the provisions of the written agreement, Poole responded affirmatively. Defense counsel still maintains that Poole's answer to this question was based on what he understood to be a 10 year sentence. Without further comment the court accepted the defendant's plea of guilty as voluntary. The docket entry further reflects this fact.[4]

---

4. It reads: March 5, 1987—Defendant appears in court with counsel. Plea of guilty entered to Count 6, Distribution of Cocaine, Count 19, Distribution of Cocaine, Count 21, Maintain Common Nuisance, and Count 22, Maintain A Common Nuisance; Not Guilty to all remaining counts; the state will Nolle pros remaining counts upon the court's acceptance of the Plea; plea has been reduced to writing and signed by defendant and counsel and presented to the court; court questioned defendant and *finds that Plea has been both voluntarily and understandingly* [sic]; State presents a statement of

Up to this point, all of the court's actions were consistent with the terms of the plea agreement and counsels' belief that the trial judge had approved the recommended sentence therein. The trial judge, however, while stating that he would go along with "most of the provisions" contained in the agreement, expressed reluctance in agreeing to the provision which allowed Poole to remain free on bail. The Assistant State's Attorney explained to the judge that the defendant was "cooperating" with the State, and needed to be free in order to fulfill this provision of the agreement. Defense counsel further emphasized the importance of this provision to the entire agreement. Obviously satisfied with this explanation, the court agreed to continue the defendant on bail. The trial judge at no point during these proceedings stated that his approval or rejection of the plea agreement was conditional or that he intended to defer his decision on the sentence until he reviewed the pre-sentence investigation report. If this was in fact his intention, it should have been so noted on the record at the time the court ordered the presentence report. See Rule 4–243(c). The judge never registered any reservations until the April 16th hearing when he advised the defendant that he considered the sentence to be a mere recommendation. These facts and circumstances we believe justify our conclusion that the trial court by its action or failure to act, misled the defendant, his counsel and the State's Attorney to believe that the critical term of the agreement, "how much time" the defendant would spend in jail, had been agreed upon. The action of the trial judge was loud and clear.

The appellate courts in Maryland have considered the procedural implications of Maryland Rule 4–243 in a number of cases. *See, e.g., Allgood v. State,* 309 Md. 58, 522 A.2d 917 (1987); *Wright v. State,* 307 Md. 552, 515 A.2d 1157 (1986); *Blinken v. State,* 291 Md. 297, 435 A.2d 86 (1981),

---

facts; *COURT ACCEPTS PLEA;* court ordered on the record that typed plea agreement be hereby sealed and not be [sic] reopened [sic] unless by written order of court.... (Emphasis added).

*cert. denied,* 456 U.S. 973, 102 S.Ct. 2235, 72 L.Ed.2d 846 (1982); *State v. Brockman,* 277 Md. 687, 357 A.2d 376 (1976); *Miller v. State,* 272 Md. 249, 322 A.2d 527 (1974); *Brent v. State,* 63 Md.App. 197, 492 A.2d 637 (1985); *Banks v. State,* 56 Md.App. 38, 466 A.2d 69 (1983); *Epps v. State,* 52 Md.App. 308, 450 A.2d 913, *cert. denied,* 294 Md. 622 (1982); *McCormick v. State,* 38 Md.App. 442, 381 A.2d 694 (1978); *Gray v. State,* 38 Md.App. 343, 380 A.2d 1071 (1977), *cert. denied,* 282 Md. 732 (1978); *Wynn v. State,* 22 Md.App. 165, 322 A.2d 564 (1974). In *State v. Brockman, supra,* we reiterated the principle, as stated in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that where a guilty plea was induced by a promise or agreement by the State, that promise must be fulfilled. 277 Md. at 694, 357 A.2d 376. Later, in *Banks v. State,* 56 Md.App. at 47, 466 A.2d 69, the Court of Special Appeals held that when a court has accepted a guilty plea and has committed itself to be bound by the provisions contained within the plea agreement, the judge cannot refuse to carry out the bargain that induced the plea.

As we explained in *State v. Brockman,* 277 Md. at 698, 357 A.2d at 383, fairness and equity required the trial judge to be held to his bargain, vis-a-vis sentencing. *See also Santobello v. New York, supra; Banks,* 56 Md.App. at 47, 466 A.2d 69. Although our holding in *Brockman* addressed the State's responsibility to uphold its side of a plea bargain, the present situation demands that the court be held to the same standard of fairness. The integrity of the plea bargaining process can only be maintained when the *quid pro quo* is fulfilled.

■ We disagree with the State's argument that Poole did not detrimentally rely on the plea agreement. The trial court had to know from its review of the agreement and discussions with counsel that, upon acceptance of the guilty plea and, more important, his release, the defendant became obligated to take actions which had irreversible consequences. The most significant of which required him to provide evidence regarding criminal activity and testify

against law enforcement officials, thus jeopardizing his life and safety. Poole fulfilled his obligations, relying on the promise to receive no more than a ten-year sentence if he fulfilled his part of the agreement.

It is this inexpiable prejudice to the defendant which influences our decision. *See, e.g., People v. McConnell,* 49 N.Y.2d 340, 425 N.Y.S.2d 794, 402 N.E.2d 133 (1980) (Defendant entitled to specific performance of plea bargain where by living up to his part of bargain, defendant put himself in no-return position, and no significant additional information bearing upon the appropriateness of plea bargain comes to court's attention); *State v. Kuchenreuther,* 218 N.W.2d 621 (Iowa 1974) (State may not withdraw from plea agreement if defendant has detrimentally relied on it).

We cannot allow the court to renege on its effective acceptance of the plea agreement as conveyed through its conduct, and then simply offer the defendant an opportunity to withdraw his guilty pleas. Nor do we envision a similar situation in which we would permit a trial court to place its imprimatur on a plea agreement, but later withdraw its approval and force the defendant to go to trial. *But cf., United States v. Thomas,* 580 F.2d 1036 (10th Cir.1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1051, 59 L.Ed.2d 92 (1979); *State v. Wenzel,* 306 N.W.2d 769 (Iowa 1981); *State v. Collins,* 300 N.C. 142, 265 S.E.2d 172 (1980).

The initial part of the inducement for Poole's guilty plea was the sentence provision. The defendant did not violate any terms of the agreement, but rather fulfilled all parts of his bargain up to the time of sentencing. His cooperation was irreversible. We hold that under these circumstances the court bound itself to the terms of the plea agreement.

## II

The second issue is whether Rule 4–243(d) requires the trial court to record chambers (or bench) conferences at which plea agreements are discussed. This issue focuses on the chambers conference of March 5, where the judge

and both counsel discussed the written plea agreement, and the bench conference later that day where counsel claim the trial judge approved the 10–year sentence.

The short answer to this question is that the Rule does not require that chambers and bench conferences dealing with the plea agreement be on the record. Rule 4–243(d) provides as follows:

> All proceedings pursuant to this Rule, including the defendant's pleadings, advice by the court, and inquiry into the voluntariness of the plea or a plea agreement shall be on the record. If the parties stipulate to the court that disclosure of the plea agreement or any of its terms would cause a substantial risk to any person of physical harm, intimidation, bribery, economic reprisal, or unnecessary annoyance or embarrassment, the court may order that the record be sealed subject to terms it deems appropriate.

Most assuredly, the policy underlying all of Rule 4–243 is to promote fair play and equity. *See Brockman,* 277 Md. at 697, 357 A.2d 376. Subsection (d) plays an obvious role in guaranteeing that result by memorializing that to which each party has agreed.

Like the Court of Special Appeals, we believe that the parties intended to proceed under subsection (c)(1) of the Rule. Accordingly, subsection (d) above required recordation of that proceeding at which both counsel advised the court of the terms of the agreement and the defendant entered his plea. Subsection (c)(1) also required the trial judge to inform the defendant whether he intended to accept or reject the plea and the agreement; as to the agreement, the judge also had the option of informing the defendant of his intent to defer his decision until a later date. In the instant case, we have seen that all of these procedures were followed except the one requiring the trial judge to inform the parties of his decision regarding the agreement. According to both counsel, the judge's decision on that issue was resolved at a bench conference which was

not placed on the record. If that discussion had been placed on the record, or even a summary of its contents, the situation presented in the case *sub judice* probably would not have arisen.

 We feel that chambers and bench conferences are an indispensable part of judicial proceedings, and, more often than not, serve to keep counsel and the court from making errors or from wasting judicial time. While, as we have stated, the Rule does not require that these discussions be recorded, we encourage trial judges to make a record of pertinent discussion and decisions reached. Alternatively, if the whole discussion is not recorded, the trial court should summarize the essential parts of the agreement, paying special attention to any modifications or unresolved provision. Of course, if either party requests that the agreement be placed on the record, the trial court should grant the request in the interest of caution. Where necessary, that portion of the record may be sealed. By taking these cautionary steps, parties will be able to effectively pursue plea negotiations and, where necessary, preserve a record of these proceedings to avoid any dispute as to the particulars thereof.

*JUDGMENT AFFIRMED WITH COSTS.*