7 A.3d 578

**Paul Antoine BAINES**

v.

**STATE of Maryland.**

**No. 135, Sept. Term, 2008.**

Court of Appeals of Maryland.

Oct. 28, 2010.

606

Brian L. Zavin, Assistant Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for petitioner.

Brenda Gruss, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, BARBERA, and JOHN C. ELDRIDGE, (Retired, specially assigned), JJ.

BARBERA, J.

This appeal concerns whether a judge who agrees to be bound to the terms of a plea agreement that calls for a sentence "within the guidelines" may impose a "split sentence" that exceeds the guidelines and suspends all but the part of the sentence that falls within the guidelines. The State and Petitioner Paul Antoine Baines negotiated a plea bargain that called for him to plead guilty to two counts of armed robbery and be sentenced "within the guidelines." The overall guidelines range for those offenses was seven to thirteen years. The court accepted the plea and agreed "just [to] commit myself within [the] Guidelines." The court sentenced Petitioner on the first count of armed robbery to 20 years, all but 7 years suspended, and on the second count of armed robbery to a consecutive 20 years, all but 6 years suspended, with the suspended part of each sentence accompanied by 5 years of probation.

Petitioner filed an application for leave to appeal, arguing that the court breached the sentencing term of the plea agreement because the total sentence, including the part of the sentence that was suspended, exceeded the sentencing guidelines. The Court of Special Appeals granted the application and, in an unreported opinion, affirmed the judgment. We granted certiorari to consider whether the sentence imposed by the Circuit Court was in breach of the plea agreement.

The answer to that question is dictated by *Cuffley v. State*, 416 Md. 568, 7 A.3d 557 (2010), which we filed today immediately prior to this opinion. Consistent with the rule announced in *Cuffley*, we hold that the sentence was in breach of the plea agreement, because the record of the plea proceeding reflects that Petitioner reasonably understood that the court would not impose a total sentence exceeding thirteen years, including both non-suspended and suspended time. There-

fore, Petitioner is entitled to the relief of specific performance of the agreement.

## I.

In March 2006, Petitioner was charged in a 30–count indictment filed in the Circuit Court for Prince George's County, with offenses arising out of a home invasion. In May 2006, an Assistant State's Attorney (not the Assistant State's Attorney who worked out the final plea bargain) mailed to Petitioner's counsel a letter setting forth the terms of a proposed plea agreement. The letter read:

> This is to advise you that the State intends to make the following plea offer in this case:
>
>> Plea to: Count 1, 8 & 15—RDW [robbery with a dangerous weapon], free to allocute within guidelines.
>
> The defendant agrees as part of the plea agreement to request a full and complete record check or PSI [presentence investigation] by Parole and Probation after accepting the plea and prior to sentencing. If the information provided by Parole and Probation would yield an offender score greater than that set forth above, then the State is free to request at the time of sentencing any period of actual incarceration, which is within the confines of the sentencing guidelines. Any and all offender scores are to be determined pursuant to the instructions set forth in the Maryland Sentencing Guidelines Manual. The State is free to file for and request mandatory sentencing if the information yielded by Parole and Probation reveals that the defendant is a candidate for mandatory sentencing.
>
> This offer expires and will be treated as having been automatically rejected if not accepted by the defendant on or before the first motions date. This plea offer is automatically rejected if the defendant litigates motions.

(Emphasis in original).[1]

The record discloses no further communications between the parties until September 2006, when they appeared in the Circuit Court for a plea hearing. At the outset of the hearing, defense counsel informed the court of the terms of the plea agreement between the parties: Petitioner would enter an *Alford* plea, *see North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to two counts of robbery with a dangerous weapon (one count for each of the two victims); the State would enter the remaining charges *nolle prosequi;* and "sentencing [would] be within Guidelines." The court confirmed that it was being asked that "I just commit myself within Guidelines?" to which the State replied, "Yes, sir. Free to allocute."

The court spoke with Petitioner to ascertain that he understood the terms of the plea agreement, which included that the court, in its words, "would sentence [Petitioner] within the Guidelines." The court also engaged Petitioner in a colloquy to ensure that the plea was knowing and voluntary. Among other questions, the court asked Petitioner about a document entitled "Waiver of Rights at Plea." That document, which Petitioner and his attorney signed on the day of the plea hearing, includes a handwritten interlineation stating: "[M]y sentence is to be within guidelines." The court asked Petitioner if he had read over the "Waiver of Rights at Plea" and understood the rights he was waiving. Petitioner replied that he understood. The State then set forth the factual basis for the plea. The court accepted the plea, ordered a pre-sentence investigation, and set a date for sentencing.

Sentencing occurred three months later. At the outset of the proceeding, the court asked if "[t]his is another guidelines case?" Defense counsel stated: "By agreement with the

---

1. As we shall see, the terms of the final plea agreement differ from those set forth in the May 2006 letter proposing a plea deal. We include the letter because, as will become evident later in this opinion, it figures in the Court of Special Appeals' opinion affirming the judgment on the basis that the sentence imposed was not in breach of the plea agreement.

Office of the State's Attorney, which you approved, the sentencing was to be within the sentencing guidelines; free to allocute within the guidelines. The other 28 counts of the indictment would be entered as nolle prosequi by the State; probation within the Court's discretion." The guidelines range, as we have mentioned, called for a sentence of 7 to 13 years' incarceration.[2]

Defense counsel informed the court that he had reviewed the pre-sentence report with Petitioner and there were "no corrections, additions or deletions to be made in the report." Defense counsel spoke on Petitioner's behalf, addressed Petitioner's four prior convictions (three of which Petitioner, evidently, incorrectly thought had been expunged), then asked the court "to impose a sentence of 13 years, suspend all but seven years, credit for time served" and "an appropriate period of probation as the Court sees fit."

The State recommended a sentence of "20 [years], suspend all but 13 years, for each count, to run concurrent, with five years supervised probation." Defense counsel did not assert that the State was barred by the terms of the agreement from making such a recommendation. The court imposed the following sentence: "On count 1, the sentence is 20 years, suspend all but seven, with five years probation. On count 8, the sentence is 20 years, suspend all but six. That's to be consecutive to count 1. Five years probation." Defense counsel did not object to the sentence imposed.

Several days after sentencing, Petitioner personally wrote to the court, asking the court to reconsider the sentence. Petitioner averred that he had entered his plea with the understanding that the sentencing range was three to nine years, "no matter what the P.S.I. report says."[3] He objected

---

2. The Sentencing Guidelines at the time called for a guidelines range of "7 to 13 years" for each of the two armed robbery offenses to which Petitioner pleaded guilty and for an "overall guidelines range" also of "7 to 13 years." *See* Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual*, ch. 9.2, at 33 (2005).

3. The record does not make clear why Petitioner believed that the plea agreement set the sentencing range at three to nine years' incarceration.

to 13 years' incarceration and did not mention the suspended part of the sentence. Petitioner suggested that the court run the two sentences concurrently.

Petitioner, through defense counsel, filed in the Circuit Court a motion for reconsideration of sentence, requesting that the sentence be reduced. The Circuit Court denied that motion, without a hearing. Defense counsel also filed an application for leave to appeal in the Court of Special Appeals. The Court of Special Appeals granted the application and transferred the case to the regular appeal docket.

Petitioner argued before the Court of Special Appeals, inter alia, that the sentence was illegal in that it exceeded the terms of the binding plea agreement. According to Petitioner, the agreement called for a "total sentence that could not exceed thirteen years." The Court of Special Appeals, in an unreported opinion, disagreed, and affirmed the judgment of the Circuit Court. The Court of Special Appeals looked to the entire record before the appellate court and, based on it, held that Petitioner understood that the Circuit Court could impose a sentence that exceeded the sentencing guidelines, so long as the un-suspended part of the sentence did not exceed the guidelines. The Court of Special Appeals noted preliminarily:

> An agreement to sentence "within the guidelines" necessarily contemplates the application of the Maryland Sentencing Guidelines Manual ("the Sentencing Manual"), which expressly provides, at § 12.1 p. 42 (2005): "Suspended time is not considered in determining whether the sentence falls within the recommended guidelines range. The guidelines range represents only non-suspended time." Therefore, the sentence imposed in this case is a sentence "within the recommended guidelines range" according to the Sentencing Manual.

The Court recognized that "[t]his does not, however, end our inquiry."

The Court of Special Appeals noted that the Circuit Court "did not advise [Petitioner] that a sentence 'within the guidelines' did not include suspended time." Moreover, the Assis-

tant State's Attorney who wrote the May 2006 plea offer letter stated that " 'the State is free to request at the time of sentencing any period of *actual incarceration* which is in the confines of the sentencing guidelines.' " (Emphasis added by the Court of Special Appeals). The Court of Special Appeals distinguished the present case from *Solorzano v. State,* 397 Md. 661, 919 A.2d 652 (2007), stating the following:

[Petitioner's] situation is quite different than Solorzano's. He did not face a possible life sentence, with its parole restrictions. Nothing in [Petitioner's] plea agreement, the initial plea offer, or the court's explanation supports a reasonable expectation that the sentence would not exceed a certain number of years. The written "Waiver of Rights at Plea" form simply stated that his "sentence is to be within the guidelines." There is no evidence that [Petitioner] was told by his attorney, or by anyone else, that the guidelines included suspended portions of a sentence and capped the total sentence to the top of the guidelines range.

Indeed, the record suggests the opposite. There was no objection when the State recommended twenty years, suspend all but thirteen years, for each count. In his pro se request for reconsideration of his sentence, [Petitioner] stated that "it was his understanding of the plea agreement that he was to receive a sentence of between three and nine years based upon his prior convictions of which he had notified defense counsel." Moreover, when counsel later filed a motion for reconsideration, he said nothing regarding the suspended portion of [Petitioner's] sentence. Rather, counsel argued that [Petitioner] "believed the total guidelines to be 4 to 9 years" and that "each count would be concurrent, one with the other."

We can assume that a competent criminal defense lawyer knows that the guidelines relate to periods of actual incarceration, and not suspended time. Under the circumstances here, and in the absence of any evidence to the contrary, when [Petitioner], represented by counsel, enters a plea with the understanding that the sentence will be "within the guidelines," a court can reasonably expect that the defense

counsel has told him that the guidelines refer to actual years of incarceration.

We granted Petitioner's petition for writ of certiorari, *Baines v. State*, 406 Md. 743, 962 A.2d 370 (2008), to answer the following question:

> Where the parties and the court enter into a plea agreement under which the court agrees to impose a sentence "within" the Sentencing Guidelines, does the court violate the agreement by imposing an executed sentence within the Guidelines as well as an additional period of imprisonment which the court suspends in favor of a term of probation?

## II.

The legal issue embodied in the question Petitioner presents is identical to the issue we recently decided in *Cuffley, supra.* Cuffley's case came to us on appeal from the denial of a motion to correct illegal sentence. The judge who presided at Cuffley's plea and sentencing held a hearing on the motion, at which he received testimony from Cuffley and the lawyer who had represented him at the plea and sentencing. The court denied the motion, based largely on the court's factual finding that defense counsel had advised Cuffley, albeit not on the record at the plea proceeding, that the agreement to sentence "within the guidelines" referred only to executed time and did not prohibit a greater sentence so long as any part of it that exceeded the guidelines was suspended. *Id.* at 576, 7 A.3d at 561. An appeal followed. The Court of Special Appeals in an unreported opinion affirmed the Circuit Court. We reversed. *Id.* at 576, 7 A.3d at 561–62.

To decide whether the Circuit Court correctly ruled that the sentence imposed upon Cuffley was not in breach of the plea agreement and was therefore a legal sentence, we first decided whether that court could properly consider extrinsic evidence, that is, evidence beyond the four corners of the plea agreement itself, to identify the reasonable understanding of the defendant. *Id.* at 581, 7 A.3d at 564. To resolve that issue, we looked to the requirements of Maryland Rule 4–243,

which governs plea agreements,[4] and to decisions of the

4. Rule 4–243 provides, in pertinent part:

 (a) **Conditions for agreement.** (1) Terms. The defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition, including one or more of the following:

 \* \* \*

 (F) That the parties will submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration pursuant to section (c) of this Rule.

 \* \* \*

 (c) **Agreements of sentence, disposition, or other judicial action.** (1) Presentation to the court. If a plea agreement has been reached pursuant to subsection (a)(1)(F) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, *the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.*

 (2) Not binding on the court. The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

 (3) Approval of plea agreement. *If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement* or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

 \* \* \*

 (d) **Record of proceedings.** All proceedings pursuant to this Rule, including the defendant's pleading, advice by the court, and inquiry into the voluntariness of the plea or a plea agreement shall be on the record. If the parties stipulate to the court that disclosure of the plea agreement or any of its terms would cause a substantial risk to any person of physical harm, intimidation, bribery, economic reprisal, or unnecessary annoyance or embarrassment, the court may order that the record be sealed subject to terms it deems appropriate.

 (Emphasis added.) *See also* Rule 4–242(b), (c) (addressing the requirements of the guilty plea itself and mandating, inter alia, that the guilty plea be offered by the defendant personally on the record and in open court, and that the trial judge "may not accept a plea of guilty until after an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof," during which the court must "determine[ ] and announce[ ] on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge

Supreme Court and this Court concerning plea agreements. *Id.* at 581–82, 7 A.3d at 564–66.

 We concluded that Rule 4–243 and the applicable case law require that the plea itself be examined to identify the defendant's reasonable understanding of its terms, at the time of the plea itself, and before the court accepts the plea. *Id.* at 582, 7 A.3d at 565–66. Moreover,

> [t]he test for determining what the defendant reasonably understood at the time of the plea is an objective one. It depends not on what the defendant actually understood the agreement to mean, but rather, on what a reasonable lay person in the defendant's position and unaware of the niceties of sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding

*Id.* Consequently, the defendant's actual knowledge, gleaned from sources outside the plea agreement (in other words, extrinsic evidence), is irrelevant to the determination. *Id.* at 582, 7 A.3d at 565–66. Therefore, if examination of the terms of the plea agreement itself, by reference to what was presented on the record at the plea proceeding before the defendant pleads guilty, reveals what the defendant reasonably understood to be the terms of the agreement, then that determination governs the agreement. If the agreement is breached, either by the prosecutor or the court, then the defendant is entitled to the benefit of the bargain, which, at the defendant's option, is either specific enforcement of the agreement or withdrawal of the plea. *Id.* at 583, 7 A.3d at 566. If, however, the record is ambiguous insofar as concerns a disputed term of the agreement, then the ambiguity must be resolved in the defendant's favor. *Id.* at 583, 7 A.3d at 583.

The facts of *Cuffley* are remarkably similar, in material respect, to the facts presented here. So too are the parties'

---

and the consequences of the plea; and (2) there is a factual basis for the plea ... ").

arguments.[5] Therefore, the rules of law we announced in-
*Cuffley* dictate the resolution of the present case. We recog-
nized in *Cuffley* that a trial court's determination of the
defendant's reasonable understanding of the plea agreement is
owed no deference; rather, the court's ruling is subject to de
novo review. *Id.* at 580–81, 7 A.3d at 564. We then had this
to say about the facts concerning Cuffley's plea proceeding
and all that occurred thereafter:

> First, it is evident from what transpired at the hearing on
> the motion to correct illegal sentence that the Circuit Court
> considered extrinsic evidence in determining what [Cuffley]
> reasonably understood, at the time he pleaded guilty, was
> the sentencing term of the agreement. That was error, for
> the reasons we have discussed.
>
> Simply put, the facts that the court and defense counsel
> understood a sentence "within the guidelines" to refer only
> to actual incarceration, and that the court could impose a
> suspended sentence that exceeds the guidelines, are irrele-
> vant to what [Cuffley] reasonably understood at the time of
> the plea to be the agreed-upon sentence. Also irrelevant
> are declarations in the *Guidelines Manual* that suspended
> time is not considered in determining whether a sentence
> falls within guidelines range, which the Court of Special
> Appeals evidently found significant in affirming the judg-
> ment of the Circuit Court. Neither is it relevant that
> [Cuffley's] defense counsel believed that she had explained
> to [Cuffley] what was meant by a sentence "within the
> guidelines." Furthermore, it is not relevant that the Circuit
> Court made a factual finding that defense counsel actually
> explained to [Cuffley] sometime before the on-the-record
> plea proceeding that the court retained the discretion to
> impose a split sentence exceeding the sentencing guidelines.
> All that is relevant, for purposes of identifying the sentenc-
> ing term of the plea agreement, is what was stated on the
> record at the time of the plea concerning that term of the

---

5. For that reason, it is unnecessary to set forth the parties' arguments
in the present case.

agreement and what a reasonable lay person in [Cuffley's] position would understand, based on what was stated, the agreed-upon sentence to be.

The record of the plea proceeding reflects the following: The prosecutor advised the court that the agreement called for a "sentence within the guidelines as formulated by" the State and the defense, which was "four to eight years." Defense counsel added nothing to explain further what the parties meant by that sentencing term. The court then expressed to [Cuffley] its understanding of the sentencing term: "The plea agreement, as I understand it, is that I will impose a sentence somewhere within the guidelines. The guidelines in this case are four to eight years. Any conditions of probation are entirely within my discretion." No mention was made at any time during that proceeding— much less before the court agreed to be bound by the agreement and accepted [Cuffley's] plea—that the four-to-eight-year sentence referred to executed time only. Neither counsel nor the court stated that the court could impose a sentence of more than eight years' incarceration that would include no more than eight years of actual incarceration, with the remainder suspended. Based on this record, a reasonable lay person in [Cuffley's] position would not understand that the court could impose the sentence it did.

The addition of the court's comment at the plea proceeding that "[a]ny conditions of probation are entirely within my discretion" does not change our conclusion. A reasonable lay person in [Cuffley's] position could understand the court's comment to mean that the court reserved the right to suspend a part of what, at most, would be an eight-year sentence, and impose a period of probation accompanied by conditions.

In short, the sentencing term of the agreement to which the court bound itself, when determined by reference to what [Cuffley] reasonably understood that term to be at the time he pleaded guilty, was that the court would impose a total sentence of no more than eight years, a portion of

which the court in its discretion might suspend in favor of a period of probation, with conditions. But even if the sentencing term of the plea agreement as expressed at the plea proceeding was ambiguous (a point [Cuffley] concedes), he is entitled to have the ambiguity resolved in his favor. *See Solorzano,* 397 Md. at 673, 919 A.2d at 659 (any ambiguity in plea agreement must be resolved against the State).

We therefore hold that, regardless of whether the sentencing term is clear or ambiguous, the court breached the agreement by imposing a sentence that exceeded a total of eight years' incarceration. The sentence is illegal and, upon [Cuffley]'s motion, the Circuit Court should have corrected it to conform to a sentence for which [Cuffley] bargained and upon which he relied in pleading guilty.

*Id.* at 583–86, 7 A.3d at 566–67 (footnotes omitted). Against this backdrop, we turn to the present case.

 We have mentioned that Petitioner's challenge to the lawfulness of the sentence was raised for the first time before the Court of Special Appeals.[6] It is evident that the Court of Special Appeals, in attempting to ascertain Petitioner's understanding of the sentencing term of the plea agreement, did not confine its examination to the record of the plea proceeding. Instead, the court considered such facts as what was contained in the May 2006 plea-offer letter proposing a plea agreement that did not come to pass, and what the *Guidelines Manual* declares about the meaning of the guidelines.[7] The intermedi-

---

6. That Petitioner failed to object to the sentence at the time the court imposed it does not preclude him from arguing on appeal that the sentence breached the plea agreement. *See Dotson v. State,* 321 Md. 515, 583 A.2d 710 (1990) (stating that a sentence that is imposed in breach of a binding plea agreement is an illegal sentence that can be challenged at any time).

7. We explained in *Cuffley,* 416 Md. 582–83 n. 5, 7 A.3d at 565 n. 5, that the *Guidelines Manual,* aside from constituting extrinsic evidence, was not incorporated because no "absolutely clear" statement expressing as much was made on the record. Specifically, we illustrated how such incorporation, as advocated by the dissent of Judge Harrell in that case, "offends the notion that it is the defendant, not his counsel, who is

ate appellate court also considered defense counsel's lack of objection to the sentence, as well as the representations of Petitioner (in his post-sentencing letter to the judge) and those of defense counsel (in his motion for reconsideration of sentence), concerning the understanding of each of them about the sentencing term of the plea. Finally, the Court of Special Appeals indulged a presumption that defense counsel had advised Petitioner that a sentence "within the Guidelines" refers only to actual incarceration and that the sentencing court could impose a greater sentence and suspend the part that was in excess of the guidelines.

◼ *Cuffley* makes clear that none of that extrinsic evidence of Petitioner's actual understanding of the plea agreement is relevant to the determination of the plea agreement's terms. That determination, we held in *Cuffley*, is measured by what a reasonable lay person in Petitioner's position at the time of the plea would have understood the agreement to be. Consequently, the only relevant facts concerning the sentencing term of the plea agreement are those that are manifest from the record of the plea proceeding.

The record of that proceeding discloses the following. Defense counsel advised the court that, for the two counts to which Petitioner would be pleading guilty, "sentencing will be within the Guidelines." The court confirmed that it was being

---

waiving constitutional rights and who therefore must fully comprehend the terms of the plea agreement." *Id.* at 583 n. 5, 7 A.3d at 565 n. 5.

Our opinion in *Solorzano* unequivocally states that if the State, as part of a plea bargain, wishes to rely on the *Guidelines Manual* provision that a "sentence" refers only to "non-suspended" time, then "the State must make absolutely clear, on the record, that it is doing so, and the defendant must be fully advised as such." *Solorzano*, 397 Md. at 674 n. 2, 919 A.2d at 659 n. 2. We reaffirm that stance in light of the rule that principles of "fair play and equity," rather than "strict application of the common law principles of contracts," govern the interpretation of plea agreements. *State v. Brockman*, 277 Md. 687, 697, 357 A.2d 376, 382–83 (1976).

As in *Cuffley*, the plea agreement in this case, as stated on the record, included no clear statement incorporating the *Guidelines Manual's* definition of "sentence," and, therefore, no such incorporation occurred.

asked "just [to] commit myself within [the] Guidelines." Defense counsel responded "yes," adding only the words "[f]ree to allocute." The prosecutor said nothing to elaborate on the meaning of the phrase "sentencing within the Guidelines." The court itself asked Petitioner if he understood that the court would "sentence [him] within the Guidelines." And, during its colloquy with Petitioner to ensure that the plea was knowing and voluntary, the court asked Petitioner if he had read and understood the "Waiver of Rights at Plea" form, which contains the handwritten interlineation that "my sentence is to be within guidelines."

■ We believe it plain from the record of the plea proceeding that Petitioner reasonably understood the plea agreement to call for a total sentence of no more than thirteen years. A reasonable lay person in Petitioner's position, moreover, would not have gleaned anything different from the court's question: "And I just commit myself within [the] Guidelines?" to which defense counsel answered "yes." There was no indication, much less a plain statement, that the court, consistent with the agreement, was free to impose a sentence beyond the guidelines so long as the court suspended all but the part of the sentence that was within the guidelines. Finally, even assuming for the sake of argument that the sentencing term was ambiguous (on these facts, we do not believe that it was), the ambiguity must be resolved in Petitioner's favor.

We hold, therefore, that the plea agreement called for a maximum sentence of thirteen years, including any suspension of sentence. Petitioner, as he is entitled to do, has requested that the breach be remedied by specific performance of the agreement. We shall grant that relief and order that the sentence be vacated and the case remanded for re-sentencing in accordance with the agreement.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE SENTENCE AND REMAND THE CASE TO THE CIRCUIT COURT FOR**

PRINCE GEORGE'S COUNTY FOR RE–SENTENCING CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.

HARRELL and MURPHY, JJ., Dissent.

HARRELL, J., dissenting.

We issued concurrently writs of certiorari in *Cuffley v. State*, 406 Md. 743, 962 A.2d 370 (2008), and the present case, *Baines v. State*, 406 Md. 743, 962 A.2d 370 (2008), because, on their face, they involved the same legal issue regarding construction of plea agreements. The Majority opinions treat these cases similarly.[8] I dissented in *Cuffley*, 416 Md. 568, 7 A.3d 557 (2010) because, instead of applying established precedent and all relevant contract interpretation principles, the Majority opinion installed a new (and unnecessary) analytical framework for the interpretation of criminal plea agreements and misapplied that framework.

The Majority opinion in *Baines* resolves the instant matter in the same unnecessarily broad fashion as *Cuffley*. As a result, I dissent again. *Baines*, however, contains an important factual difference from the facts of *Cuffley*. Although that difference does not change ultimately the outcome of my analysis, it affects the substance of my analysis in a significant way.

I.

Petitioner, Paul Antoine Baines, was charged in a 30–count indictment regarding a home invasion incident. On the day of the plea hearing, Baines signed a form entitled "Waiver of Rights at Plea." Among other things, the form posed in the interrogative what was the "maximum penalty for the of-

---

**8.** "The facts of *Cuffley* are remarkably similar, in material respect, to the facts presented here. So too are the parties' arguments. Therefore, our application of the rules of law we announced in *Cuffley* to the facts of that case dictate the resolution of the present case." Majority op. at 615–16, 7 A.3d at 585 (footnote omitted).

fense(s) to which [he was] pleading guilty...." "Twenty" years was written as the answer and, on the margin, it was noted that "[his] sentence [was] to be within guidelines."

At the plea hearing, Baines pleaded guilty to two counts of armed robbery. In exchange, the State entered *nolle prosequi* the twenty-eight other counts and asked for a sentence that was "within the Guidelines." [9] The parties concurred that such a sentence, combining both counts, would be between seven and thirteen years. Before accepting the plea, however, the court asked Baines several questions about the "Waiver of Rights" form. Baines affirmed that he had read, understood, and signed it. Subsequently, the court accepted his plea and ordered a pre-sentence investigation and report.

A few months later, the parties re-assembled for the sentencing hearing. Defense counsel began the hearing with a summary of his understanding of the plea agreement terms— "[b]y agreement with the Office of the State's Attorney, which you approved, the sentencing was to be within the sentencing guidelines; free to allocate within the guidelines. The other 28 counts of the indictment would be entered as nolle prosequi by the State; *probation within the Court's discretion.*" (Emphasis added.) Defense counsel then offered his recommendation, asking "the Court to impose a sentence of 13 years, suspend all but seven years, credit for time served ... *and an appropriate period of probation as the Court sees fit.*" (Emphasis added.) The State, for its part, countered with a request for "20, suspend all but 13 years, for each count, to run concurrent, with five years supervised probation." Ultimately, the court imposed "[o]n count 1 ... 20 years, suspend all but seven, with five years probation. On count 8 ... 20 years, suspend all but six. That's to be consecutive to count 1. Five years probation."

---

9. *See* Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual* (2005). The provisions of the Sentencing Guidelines relevant to the present case have remained unchanged since Baines entered his plea.

Based on this record, the Majority opinion states unhesitatingly that " 'a reasonable lay person in the Petitioner's position would not understand that the court could impose the sentence it did.' " Majority op. at 617, 7 A.3d at 586 (quoting *Cuffley*, Majority op. at 585, 7 A.3d at 567). Rather, he or she would have understood the word "sentence" to mean a "*total* sentence of no more than thirteen years." Majority op. at 620, 7 A.3d at 588 (emphasis added). To reach this conclusion, the Majority opinion, as in *Cuffley*, rewrites unnecessarily our precedent, despite the fact that the parties here agreed to a single interpretation of the plea agreement.

## II.

In my dissent in *Cuffley*, I stated:

In interpreting plea agreements in criminal law contexts, courts apply contract law principles. When interpreting contracts, Maryland courts follow the objective approach. If contract language (be it oral or written) is clear and unambiguous, a court limits its interpretation to that language alone. It does not factor into the equation the actual intent of the parties. If, however, the language of a written contract is unclear or ambiguous, a court may consider extrinsic, intent-related evidence. In the case of an oral contract, if the existence of the contract or its terms is disputed, then, again, a court may consider extrinsic evidence. Plea agreements, of course, implicate more than contract rights. As such, exclusive application of contract law is not appropriate. Rather, "[d]ue process concerns for fairness and the adequacy of procedural safeguards" also must guide a court's interpretation. Nonetheless, "in an appropriate case," "[p]rivate law interpretive principles may be wholly dispositive."

*Cuffley*, Dissent at 588–89, 7 A.3d at 569 (Harrell, J., dissenting) (internal citations and footnote omitted). Basic contract principles supply a narrow way to resolve both *Cuffley* and this case. The Majority opinion, however, trods the path never followed heretofore. In *Baines*, in addition to adopting *Cuffley's* mis-reading and mis-application of Rule 4–243, the Majority opinion misconstrues our precedent involving inter-

pretation of criminal plea agreements, and adopts a new analytical paradigm, which it mis-applies to the facts of this case. *See Cuffley,* Dissent op. at 590–94, 7 A.3d 569–72 (Harrell, J., dissenting).

Despite the factual similarities between *Cuffley* and *Baines,* the cases differ in one significant respect. In *Cuffley,* the parties agreed, on the plea hearing record, to a sentence within the Sentencing Guidelines *and* a separate probationary period. In *Baines,* however, the record of the plea hearing does not mention explicitly that probation was a possibility. The parties and the court spoke only about a sentence within the Guidelines. This difference is important, but it does not affect my ultimate conclusion that Baines knew, or should have known, the court could impose the sentence it did.

With respect to the period of actual incarceration, the Majority opinion asserts that the parties agreed, in effect, to a "total sentence of no more than thirteen years." Majority op. at 620, 7 A.3d at 588. The parties did not agree to a "total sentence," but rather to a "sentenc[e] within the Guidelines." Unless the facts of the case implicate constitutional or supervisory concerns (which they do not here) we should honor the objective meaning of that agreement. Under the principle of "incorporation by reference," discussed in my dissenting opinion in *Cuffley,* "sentence" refers only to "non-suspended," or executed, time. Maryland State Commission on Criminal Sentencing Policy, *Maryland Sentencing Guidelines Manual* § 12.1, p. 42 (2005). By agreeing to a Guidelines range sentence, the parties expressly agreed to, and therefore contemplated, the imposition of a period of actual incarceration.

Because there was no express mention of probation at the plea hearing in *Baines,* however, doubt could exist as to what Baines would have understood reasonably regarding a period of probation. Rule 4–242 requires trial courts, before accepting a plea, to determine that the defendant understands "the consequences of the plea," and probation may be a direct consequence of a plea.[10] Baines was informed [11] only that his

---

**10.** In *Daley v. State,* 61 Md.App. 486, 488, 487 A.2d 320, 321 (1985), the Court of Special Appeals noted correctly that the phrase, " 'the conse-

maximum possible sentence was twenty years, not enough information, in and of itself, to put him on notice of the possibility of probation. As a result, the principle of incorporation by reference of the Guidelines accounts for only the period of actual incarceration, not the period of probation. It

---

quences of the plea,' has been construed in Maryland to impose upon trial judges the duty to inform defendants of direct consequences of pleading guilty, such as the maximum potential sentence." (citing *Bryant v. State*, 47 Md.App. 551, 556, 424 A.2d 1115, 1118 (1981)); *see also Holmes v. State*, 401 Md. 429, 473–74, 932 A.2d 698, 724–25 (2007) ("Rule 4–242 ... requires the judge to inform the defendant of the direct consequences of the plea ...." (citation and footnote omitted)). "A direct consequence," we have held, is "one that has 'a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" *Yoswick v. State*, 347 Md. 228, 240, 700 A.2d 251, 256 (1997) (quoting *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364 (4th Cir.1973)). Based on the fact that probation is imposed, if at all, for a finite period of time, almost immediately upon a finding of guilty, I am persuaded that probation is such a direct consequence.

In reaching this conclusion, I draw also on federal caselaw, "[k]eeping in mind ... that so many of our procedural rules track the Federal Rules of Procedure." *Bryant*, 47 Md.App. at 556, 424 A.2d at 1117. Like Md. Rule 4–242, Rule 11 of the Federal Rules of Criminal Procedure sets forth the information that must be communicated to defendants so that their pleas are knowing and voluntary. In *Moore v. United States*, 592 F.2d 753 (4th Cir.1979), the Court of Appeals for the Fourth Circuit considered whether Rule 11 requires defendants to understand that a special parole term may be added to their underlying sentence. Because a special parole violation could increase "the possible period of confinement," the Court of Appeals held that "[e]xplanation ... in open court is ... essential to comply with the Rule's mandate that the defendant be informed of the maximum possible penalty...." *Moore*, 592 F.2d at 755 (internal quotation marks and citations omitted). In the same way, because a probation violation may lead to additional penalties, the trial court should have informed Baines of the possibility of a probationary period being imposed (with the attendant consequences associated with violation thereof), before accepting his plea. *See also State v. Poole*, 321 Md. 482, 499, 583 A.2d 265, 273 (1991) (holding that, pursuant to Rule 4–243, "the trial court should summarize the essential parts of the agreement"); *Banks v. State*, 56 Md.App. 38, 53, 466 A.2d 69, 76 (1983) (holding that, pursuant to Rule 4–243, material provisions "to a plea agreement should be stated on the record").

11. The trial court did not explain that a conviction of each count of armed robbery carries with it a maximum sentence of twenty years. Rather, the parties incorporated by reference the "Waiver of Rights" form, which explained the relevant statutory maximums.

does not allow us to conclude whether Petitioner knew, or should have known, that the court could impose the complete sentence it did. Application of the reasonable person standard, on the facts of the plea hearing record, adds no greater certainty to the analysis because the plea hearing record does not reflect any discussion or mention of probation.

If this were the end of my analysis, I might conclude that, unlike in *Cuffley*, the record in *Baines* did not inform a reasonable person that the court could impose the sentence it did, and, therefore, the sentence was illegal. I consider, however, one last rhetorical question—whether the parties, despite the absence of express discussion of probation in the plea hearing record, nonetheless agreed to a unanimous interpretation of the plea agreement. I agree with the Court of Appeals for the federal Fourth Circuit that there is one more step in a complete and proper analysis—the reviewing court should examine extrinsic evidence to determine whether, notwithstanding "an ambiguously worded plea agreement," the parties "actually had agreed—or mutually manifested their assent to—a[single] interpretation." *United States v. Harvey*, 791 F.2d 294, 303 (4th Cir.1986).[12]

Here, the record shows that the parties, in fact, did form a mutual assent to a single interpretation of the plea agreement.[13] Regarding the period of actual incarceration, the

---

**12.** The Court of Appeals for the Ninth Circuit also follows this approach. In particular, it instructs its trial courts that, when a plea agreement is ambiguous

> a court, following contract law, objectively looks to extrinsic evidence to determine the parties' reasonable understanding of the term's meaning. Only if the extrinsic evidence regarding the parties' intent fails to resolve the term's ambiguity must the court apply the rule construing ambiguous terms against the drafting party.

*United States v. Clark*, 218 F.3d 1092, 1096 (9th Cir.), *cert. denied*, 531 U.S. 1057, 121 S.Ct. 668, 148 L.Ed.2d 569 (2000).

**13.** As I stated in my dissent in *Cuffley*, employing, for the sake of argument, the analytical framework set up by the Majority opinion

> we preclude ourselves from ever discovering such a case. From this point forward, if we encounter ambiguity in a plea agreement, we will go no further. Instead, we will cage our analysis and accept the

principle of "incorporation by reference" and the reasonable person/plain meaning standard prove that the parties agreed to a period of incarceration within the Guidelines. Furthermore, prior to the plea hearing, the State sent Baines a written plea offer, stating that it would seek a "period of actual incarceration, which is within the confines of the sentencing guidelines," if Baines would plead guilty to three particular counts.

Regarding the period of probation, evidence extrinsic to the plea hearing demonstrates that the parties agreed to the imposition of probation. At the beginning of the sentencing hearing, defense counsel reiterated, for the court, the terms of the bargain.

> Your honor, on September 19, 2006 ... Mr. Baines entered a plea of guilty to two counts of robbery with a deadly weapon. By agreement with the Office of the State's Attorney, which you approved, the sentencing was to be within the sentencing guidelines, free to allocute within the guidelines. The other 28 counts of the indictment would be entered as nolle prosequi by the State; *probation within the Court's discretion.* [Emphasis added.]

Thereafter, defense counsel asked specifically for "a sentence of 13 years, suspend all but seven ... *and an appropriate period of probation as the Court sees fit.*" (Emphasis added.) After sentencing, Baines signed a "Probation/Supervision Order," agreeing—and, more importantly, not objecting—to a five-year probationary period. Finally, Baines never claimed, either before or during litigation in the trial court, that a probationary period was unapproved or unexpected. Taken together, these facts demonstrate that Baines not only

---

defendant's interpretation or, at least, one favorable to him or her. That is true even where, as here, there is a mound of extrinsic evidence demonstrating a mutual manifestation of assent. It is also true where, as here, neither due process nor procedural safeguard issues are implicated. And it is true where, as here, equity would demand otherwise.

*Cuffley,* Dissent op. at 601, 7 A.3d at 576–77 (Harrell, J., dissenting).

agreed to, but—like most defendants—actually preferred a probationary period. Consequently, it is clear that the parties knew, or should have known, the court could impose the sentence it did—a prison sentence followed by probation. The sentence, therefore, was legal.

For the foregoing reasons, I would affirm the judgments of the Court of Special Appeals and the Circuit Court for Prince George's County.

MURPHY, J., dissenting.

For the reasons stated in the dissenting opinion that I filed in *Cuffley v. State,* 416 Md. 568, 7 A.3d 557 (2010), I dissent from the holding that "Petitioner is entitled to the relief of specific performance of the agreement." A defendant is entitled to specific performance only when there has been a "meeting of the minds" between the defendant and the trial court. If there is a misunderstanding between the defendant and the trial court with respect to the maximum sentence that can be imposed, the defendant's guilty plea does not conform to the requirements of Md. Rule 4–242(c), and the defendant is therefore entitled to the relief provided for in Md. Rule 4–243(c)(4). The defendant, however, is not entitled to receive a sentence that the sentencing judge never agreed to impose.