36 A.3d 499

**Elroy MATTHEWS, Jr.**

v.

**STATE of Maryland.**

**No. 20, Sept. Term, 2011.**

Court of Appeals of Maryland.

Jan. 26, 2012.

504

James M. Nichols and Rebecca L. Smith (Byron L. Warnken of Warnken, LLC, Towson, MD), on brief, for Petitioner.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and JOHN C. ELDRIDGE, (Retired, specially assigned), JJ.

BARBERA, J.

Maryland Rule 4–345, "**Sentencing—Revisory power of court**," provides, in pertinent part, "(a) **Illegal sentence.** The court may correct an illegal sentence at any time." Elroy Matthews, Jr., Petitioner, invoked Rule 4–345(a) to challenge the legality of the sentence he received following his plea of guilty to certain charges, in the Circuit Court for Baltimore County, as part of a plea agreement. Petitioner argued that the sentence was illegal because it exceeded the sentence to which the court had bound itself. The Circuit Court denied the motion without a hearing, and Petitioner appealed. The Court of Special Appeals held that a challenge to the legality of a sentence on the ground that it violates a binding term of a plea agreement is not cognizable under Rule 4–345(a) and, even if it were, the sentence Petitioner received was not illegal.

■ For the reasons that follow, we hold that Rule 4–345(a) is an appropriate vehicle for challenging a sentence that is imposed in violation of a plea agreement to which the sentencing court bound itself. We further hold that the sentence Petitioner is serving is illegal because it exceeds the sentencing "cap" to which the Circuit Court agreed to be bound.

I.

Petitioner entered a plea of guilty to charges of attempted first-degree murder, two counts of first-degree assault, and

unlawful use of a handgun in the commission of a felony or crime of violence. In exchange for that guilty plea, the State agreed to: (1) enter a *nolle prosequi* to the remaining counts with which Petitioner was charged in that case; (2) enter a *nolle prosequi* to the charges in a related case; and (3) argue, with respect to the charges to which Petitioner was pleading guilty, "for incarceration within the—to the top of the guidelines range ...[,] twenty-three to forty-three years." The State added that it would "be asking for incarceration of forty-three years.... That cap is a cap as to actual and immediate incarceration at the time of initial disposition." The sentencing court stated that it "agreed to cap any sentence." In addition, the court advised Petitioner that "theoretically I can give you anything from the mandatory minimum on the one count, which is five years without parole, up to the maximum of life imprisonment."

At the sentencing proceeding several months later, the State asked the court to "impose a sentence of life imprisonment, suspend all but forty-three years of that." Petitioner requested "a split sentence and a substantial period of incarceration" and argued that "ten years is appropriate." The court sentenced Petitioner on the lead count of attempted first-degree murder to life imprisonment, with all but thirty years suspended, with concurrent sentences of twenty-five years for each of the two assault charges, and twenty years, with a mandatory five-year minimum, for the handgun charge. Petitioner thereby received a total sentence of life imprisonment, with thirty years of it as executed time.

### The postconviction proceeding

Approximately eighteen months later, Petitioner filed a petition for postconviction relief, followed by an amended petition nearly twenty months later. The amended petition asserted ineffective assistance of counsel for, *inter alia*, failing to object to the State's breach of the plea agreement in requesting a life sentence with all but forty-three years suspended, instead of a total sentence of forty-three years, inclusive of any suspended portion.

The postconviction court, evidently having reviewed the transcript of the plea hearing,[1] made a finding that the Assistant State's Attorney had said at the plea proceeding that he would recommend "forty-three years," but then, at sentencing, breached that term of the agreement by recommending "life imprisonment, suspend all but forty-three years."[2] The postconviction court therefore concluded that Petitioner was deprived of the benefit of his bargain. Evidently the parties did not raise, and the postconviction court did not address, what the sentencing court meant by stating at the plea hearing that it had bound itself to "cap" the sentence. The postconviction court nonetheless stated in the order that the plea agreement was "not presented as a binding plea under Rule 4–243(c)[3],

---

**1.** The record before us does not contain a transcript of the postconviction hearing but does contain a transcript of the plea hearing.

**2.** The postconviction court found preliminarily that Petitioner had waived his challenge to the State's breach of the plea agreement by not raising the issue on direct appeal, but that "special circumstances" existed to excuse the waiver. The "special circumstances" were that a defendant serving a sentence of forty-three years would be eligible for parole after serving one half of his sentence, whereas a defendant serving a life sentence, suspend all but forty-three years would be eligible for parole only with approval from the Governor after serving fifteen years.

**3.** Maryland Rule 4–243(c) provides:

**Agreements of sentence, disposition, or other judicial action.**
(1) Presentation to the court. If a plea agreement has been reached pursuant to subsection (a)(1)(F) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.

(2) Not binding on the court. The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

(3) Approval of plea agreement. If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement

[so] the trial court upon resentencing shall be free to impose whatever sentence it feels appropriate." The postconviction court issued an order granting Petitioner a new sentencing hearing.

## The Re-sentencing

As is customary, the original sentencing judge presided at the re-sentencing. The Assistant State's Attorney informed the sentencing judge that the postconviction court had "ultimately determined that when I [the State] said 'Life suspend all but forty-three' as opposed to 'forty-three,' that somehow breached the plea agreement that had been reached." The State added that the postconviction court's ruling had no bearing on the legality of the sentence the court originally imposed. The State argued that the sentencing court could "turn around and impose the same very sentence that you imposed before and there would be nothing unlawful."

Petitioner disagreed with the State's understanding of the import of the postconviction court's ruling. Petitioner, represented by counsel, argued that the court was bound at re-sentencing not to exceed a total sentence of forty-three years, with no more than thirty years of executed time. Petitioner reasoned that the court had indicated at the plea hearing that it would "cap any sentence" in response to the State's representation that the guidelines range was "twenty-three to forty-

---

or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

(4) Rejection of plea agreement. If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea or guilty or nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement. If the defendant persists in the plea, the court may accept the plea of guilty only pursuant to Rule 4–242(c) and the plea of nolo contendere only pursuant to Rule 4–242(d).

(5) Withdrawal of plea. If the defendant withdraws the plea and pleads not guilty, then upon the objection of the defendant or the State made at that time, the judge to whom the agreement was presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement.

three years" and the State would "argue for the top." Further, the State's agreement to recommend "forty-three years" was intertwined inextricably with the court's stated agreement at the plea hearing to "cap" Petitioner's sentence. And, given that the postconviction court granted Petitioner a new sentencing proceeding because the State had breached the plea agreement by recommending life imprisonment, suspend all but forty-three years, it necessarily followed that the court's sentence of life, all but thirty years suspended, was likewise illegal in that it violated the agreed-upon "cap" of forty three years of both executed and un-executed time. Finally, because the court's original sentence contained only thirty years of executed time, the new sentence, capped at a total of forty-three years, could not contain more than thirty years of executed time.

The court re-imposed the original sentence of life, suspend all but thirty years, on the lead count of attempted murder, with concurrent sentences on each of the remaining three counts. The court explained why it believed it could re-impose that sentence: "[T]he Court is of the opinion I was clear at the time I accepted this individual's plea, I was clear at the time I sentenced this individual, and that the sentence in this case that I could give [Petitioner] would be life on the first count suspend all but thirty years...."

Petitioner thereafter filed, pursuant to Maryland Rule 4–345(a), the "Motion to Correct Illegal Sentence" that is the subject of the present appeal. We have mentioned that the motion was denied without a hearing, and Petitioner appealed. *See State v. Wilkins*, 393 Md. 269, 273, 900 A.2d 765, 767 (2006) (noting that the denial of a motion to correct an illegal sentence is an appealable final order).

### The Appeal

On appeal to the Court of Special Appeals, Petitioner supported his argument that his sentence was illegal with two recently decided cases from this Court, *Cuffley v. State*, 416 Md. 568, 7 A.3d 557 (2010), and *Baines v. State*, 416 Md. 604, 7 A.3d 578 (2010). In those cases, about which we shall say

more *infra*, we held that, when the record of a plea proceeding reflects that a defendant reasonably could have understood that the sentencing court agreed to be bound to a certain maximum sentence, inclusive of any suspended portion, then the court that imposes a sentence in excess of that maximum breaches the plea agreement. In that circumstance, the original sentence is illegal and the court must re-sentence the defendant, if that is the defendant's wish, in accordance with the terms of the plea agreement. *See Cuffley,* 416 Md. at 586, 7 A.3d at 567; *Baines,* 416 Md. at 620, 7 A.3d at 588.

The State responded that Petitioner's new sentence was not illegal. The State also argued preliminarily that Petitioner's challenge could not be presented by way of a Rule 4–345(a) motion to correct an illegal sentence. The State asserted that Rule 4–345(a) is not a proper vehicle for raising the type of sentencing illegality that Petitioner was claiming.

The Court of Special Appeals agreed with both of the State's contentions and affirmed the judgment of the Circuit Court. *Matthews v. State,* 197 Md.App. 365, 387, 13 A.3d 834, 847 (2011). The intermediate appellate court held that Petitioner's challenge failed at the threshold because his claim that the sentence violated the plea agreement was not cognizable under Rule 4–345(a). 197 Md.App. at 375, 13 A.3d at 840. That court further held that, in any case, the sentence was not illegal. *Id.* at 378, 13 A.3d at 841. On that score, the Court of Special Appeals saw the pertinent question as whether the sentencing court "complied with the mandate of [the postconviction court]" to impose whatever sentence the court deemed appropriate. *Id.* at 386–87, 13 A.3d at 847. The Court of Special Appeals concluded that life imprisonment with all but thirty years suspended was a legal (and appropriate) sentence for an individual guilty of attempted murder in the first degree. *Id.* at 387, 13 A.3d at 847.

We granted Petitioner's petition for writ of certiorari, *Matthews v. State,* 419 Md. 646, 20 A.3d 115 (2011), to consider the following question: "Whether a plea agreement, conditioned on an agreed upon 'capped' term of years, results in an illegal

sentence when the trial court sentences the Defendant to life, but suspends a portion of the life sentence to make the non-suspended portion not exceed the agreed upon 'cap'?"

## II.

### *"Illegal sentence" under Rule 4–345(a)?*

■ Implicit in the question Petitioner presents is the threshold question of whether his challenge to the sentence the court re-imposed following the grant of postconviction relief is cognizable under Rule 4–345(a). We have noted that, in the view of the Court of Special Appeals, the answer to that question is "no." For the reasons that follow, we hold that the answer is "yes."

Petitioner and the State disagree about the meaning of our prior decisions on the issue. Both recognize that Rule 4–345(a) provides a means to seek correction of an illegal sentence whenever the illegality "inhere[s] in the sentence itself." The parties are at odds, though, as to what is included within the meaning of an illegality that "inheres" in the sentence. Petitioner asserts that our recent decisions make clear that sentences in excess of binding plea agreements are illegal and therefore may be challenged pursuant to Rule 4–345(a). The State counters that prior caselaw stringently limits the category of sentences that may be deemed "illegal" under Rule 4–345(a) to those that either exceed the statutory maximum or are imposed where no conviction was entered. We conclude that Petitioner presents the more accurate view of our caselaw interpreting Maryland Rule 4–345(a).

To begin, we agree with Petitioner and the State, as well as the Court of Special Appeals in its opinion in this case, *Matthews*, 197 Md.App. at 375, 13 A.3d at 840, that, for purposes of Rule 4–345(a), the illegality must inhere in the sentence itself, rather than stem from trial court error during the sentencing proceeding. *See, e.g., Montgomery v. State*, 405 Md. 67, 74–75, 950 A.2d 77, 82 (2008) ("A motion to correct an illegal sentence ordinarily can be granted only where there is some illegality in the sentence itself or where no sentence

should have been imposed. On the other hand, a trial court error during the sentencing proceeding is not ordinarily cognizable under Rule 4–345(a) where the resulting sentence or sanction is itself lawful." (quotation mark and citations omitted)); *Randall Book Corp. v. State,* 316 Md. 315, 322–23, 558 A.2d 715, 719 (1989) (explaining that "whether the trial judge was motivated by . . . impermissible considerations in imposing sentence will be considered on direct appeal. However, while improper motivation may justify vacation of the sentence, it does not render the sentence illegal within the meaning of Rule 4–345" (citations omitted)). *Accord Tshiwala v. State,* 424 Md. 612, 616–21, 37 A.3d 308, 310–13, 2012 WL 171345 (2012) (collecting cases).

We have also made clear that,

[i]f a sentence is "illegal" within the meaning of [Rule 4–345(a) ], the defendant may file a motion in the trial correct to "correct" it, notwithstanding that (1) no objection was made when the sentence was imposed, (2) the defendant purported to consent to it, or (3) the sentence was not challenged in a timely-filed direct appeal. That is the thrust of *Walczak* [*v. State,* 302 Md. 422, 488 A.2d 949 (1985) ], *Goff* [*v. State,* 387 Md. 327, 875 A.2d 132 (2005) ], and a dozen other cases. The sentence may be attacked on direct appeal, but it also may be challenged collaterally and belatedly, and, if the trial court denies relief in response to such a challenge, the defendant may appeal from that denial and obtain relief in an appellate court.

*Chaney v. State,* 397 Md. 460, 466, 918 A.2d 506, 509 (2007).

Consistent with the distinction between illegal sentences that are cognizable under Rule 4–345(a) and those that are not, we have denied relief pursuant to Rule 4–345(a) because the sentences imposed were not inherently illegal, despite some form of error or alleged injustice. *See, e.g., Pollard v. State,* 394 Md. 40, 47, 904 A.2d 500, 504 (2006) (holding that the trial judge's failure to exercise discretion in sentencing did not render substantively illegal the life sentence imposed); *Wilkins,* 393 Md. at 272, 900 A.2d at 767 (holding same); *State*

*v. Kanaras,* 357 Md. 170, 185, 742 A.2d 508, 517 (1999) (holding that a sentence was not illegal when the Parole Commission's actions had the effect of denying the inmate parole consideration to which he was statutorily entitled because the illegality was in the Parole Commission's conduct, not in the sentence). *See also Chaney,* 397 Md. at 465–68, 918 A.2d at 509–511 (concluding that probation conditions were permissible and not inherently illegal; therefore, a challenge to the condition could be waived).

We have deemed sentences inherently "illegal" pursuant to Rule 4–345(a) when the sentences exceeded the limits imposed by law, be it statute or rule. *See, e.g., Solorzano v. State,* 397 Md. 661, 672–74, 919 A.2d 652, 658–59 (2007) (holding that the defendant was entitled to vacatur of the sentence and resentencing in conformance with the sentencing term of the plea agreement because the trial court had accepted the terms of the defendant's plea agreement, the defendant relied on that acceptance in pleading guilty, and the trial court had refused to correct the sentence in accordance with the plea agreement pursuant to a Rule 4–345(a) motion); *Walczak,* 302 Md. at 433, 488 A.2d at 954 (holding that a condition of probation to pay restitution in connection with a crime of which the defendant was not convicted was illegal in that it exceeded the statutory authority to impose a requirement of restitution).

We have said that the State, as well as the Court of Special Appeals, *see Matthews,* 197 Md.App. at 375, 13 A.3d at 840, are of the view that a sentence that exceeds the sentence agreed upon as part of a binding plea agreement is not cognizable under Rule 4–345(a). To our knowledge, we have not had the occasion before now to respond directly to a fully briefed argument to that effect. So, we make clear with this opinion what we believe to be strongly suggested by our opinion in *Solorzano,* and stated more plainly in *Cuffley,* that such an illegal sentence is cognizable under Rule 4–345(a).

In *Solorzano,* the defendant pleaded guilty to attempted murder and, in exchange, the State agreed to "bind itself to

the top of the guidelines, ... believed to be twelve to twenty years." 397 Md. at 664, 919 A.2d at 654 (quotation mark omitted). The court accepted the plea based on the anticipated guidelines range, found Solorzano guilty, and ordered a pre-sentence report, which confirmed the guidelines range of twelve to twenty years. *Id.* at 665, 919 A.2d at 655. At sentencing, however, the court indicated that "[t]he State has agreed not to recommend more than twenty years ... but the Court is not bound to that recommendation and could in fact sentence up to life in prison." *Id.* at 666, 919 A.2d at 655. After sentencing, Solorzano filed a motion to correct an illegal sentence and a motion to vacate his guilty plea. *Id.* at 667, 919 A.2d at 655. The sentencing court denied both motions. *Id.*, 919 A.2d at 655.

We recognized that, although Rule 4–243(c)(1) imposes upon "a trial court ... no obligation to accept any particular sentence agreed upon by the State and a defendant," Rule 4–243(c)(3) requires the trial court, if it has approved the agreement, to "fulfill the terms of that agreement if the defendant pled guilty in reliance on the court's acceptance." *Id.* at 669–70, 919 A.2d at 657. Applying the dictates of Rule 4–243, we held that the trial court had accepted the plea agreement and Solorzano was entitled to specific performance of it. *Id.* at 670, 919 A.2d at 657. We recognized, in addition to the requirements of Rule 4–243, that, "[o]nce a defendant enters a guilty plea and the plea is accepted by the court, due process requires the plea bargain be honored." *Id.* at 673, 919 A.2d at 659 (citing *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Relevant to the issue we consider here, we gave no indication that the sentence imposed in breach of the binding plea agreement could not have been corrected by review of the court's denial of Solorzano's Rule 4–345(a) motion.

Consistent with the holding of *Solorzano*, and more directly on point with the case at bar, is our decision in *Cuffley*. In *Cuffley* we considered "whether ... a judge who agrees to be bound to the terms of a plea agreement that calls for a sentence 'within the guidelines' may impose a sentence that

involves a term of incarceration that exceeds the guidelines but suspends all but the part of the sentence that falls within the guidelines." 416 Md. at 573, 7 A.3d at 560. Cuffley pleaded guilty to robbery pursuant to a plea agreement that the State would "recommend a sentence within the guidelines . . . [of] four to eight years." *Id.*, 416 Md. 568, 7 A.3d at 560. The trial court repeated its understanding of the agreement, that the court would "impose a sentence somewhere within the guidelines. The guidelines in this case are four to eight years." *Id.* at 574, 7 A.3d at 560. The court ensured that defendant's guilty plea was knowing and voluntary and then accepted the plea agreement and bound itself to its terms. *Id.*, 7 A.3d at 560. At the sentencing hearing, the court imposed a sentence of fifteen years, suspend all but six. *Id.*, 7 A.3d at 560.

Several years later, Cuffley filed a motion pursuant to Rule 4–345(a) to correct what he believed was a sentence that violated the sentencing cap to which the court had bound itself. *Id.* at 574–75, 7 A.3d at 561. The sentencing court denied the motion, reasoning that "suspended time and conditions of probation are within [the court's] discretion," and the court's discretionary powers were "alluded to . . . even if not specifically stated on the record." *Id.* at 576, 7 A.3d at 561 (first alteration in original). We disagreed.

Analyzing Rule 4–243(c), which mandates that a court that has accepted and approved a plea agreement "*shall* embody in the judgment the agreed sentence" *id.* at 581, 7 A.3d at 565, we explained that,

> by its express terms, Rule 4–243 requires strict compliance with its provisions. We further conclude, as the natural consequence of requiring strict compliance with the Rule, that any question that later arises concerning the meaning of the sentencing term of a binding plea agreement must be resolved by resort *solely* to the record established at the Rule 4–243 plea proceeding. The record of that proceeding must be examined to ascertain precisely what was presented to the court, in the defendant's presence and before the court accepts the agreement, to determine what the defen-

dant reasonably understood to be the sentence the parties negotiated and the court agreed to impose.

*Id.* at 582, 7 A.3d at 565.

Applying that rule to Cuffley's plea agreement, we concluded that a lay person in Cuffley's position would not reasonably have understood the plea agreement term of "within the guidelines" to include a suspended portion beyond the four to eight years. *Id.* at 585, 7 A.3d at 567. Ultimately, we held that "the court breached the agreement by imposing a sentence that exceeded a total of eight years' incarceration"; therefore, the sentence was illegal. *Id.* at 586, 7 A.3d at 567. We viewed the illegality as inhering in the sentence itself;[4] the sentence, in other words, was not merely the product of procedural or trial court error. Consequently, "the Circuit Court should have corrected it to conform to a sentence for which Petitioner bargained and upon which he relied in pleading guilty." *Id.*, 7 A.3d at 567.

In the case *sub judice*, the Court of Special Appeals concluded that, because the issue was not addressed specifically in our opinion in *Cuffley*, that decision did not resolve conclusively whether Rule 4–345(a) is a proper vehicle through which to challenge a sentence imposed allegedly in excess of a binding plea agreement. 197 Md.App. at 375–77, 13 A.3d at 840–41. The intermediate appellate court reasoned further that, if so interpreted, *Cuffley* would "overrule the rationale that permeates [prior caselaw]." *Id.* at 376, 13 A.3d at 840–41. We disagree.

*Cuffley* adhered to our precedent limiting relief pursuant to Rule 4–345(a) to challenges to inherently illegal sentences. Cuffley's sentence was imposed in violation of Rule 4–243(c), which by operation of its terms establishes the maximum sentence a court lawfully can impose after approving a plea agreement. Because Cuffley's sentence exceeded the maxi-

---

4. Indeed, we noted that "[w]e have held that a sentence that exceeds the sentence to which the parties agreed as part of a plea agreement is an illegal sentence within the meaning of Rule 4–345(a)." *Cuffley v. State*, 416 Md. 568, 575 n. 1, 7 A.3d 557, 561 n. 1.

mum sentence the court had bound itself to impose, the sentence was not merely the product of procedural error; rather it was inherently illegal and thereby subject to correction under Rule 4–345(a).

*Cuffley* adds further judicial gloss to the concept we recognized in *Dotson v. State,* 321 Md. 515, 583 A.2d 710 (1991). *Dotson* came to this Court as an appeal of a sentence imposed by a review panel. *Id.* at 521, 583 A.2d at 713. Dotson had pleaded guilty, pursuant to a plea agreement, to two counts for which the State agreed it would recommend a maximum total sentence of 18 years. *Id.* at 519, 583 A.2d at 712. "[T]he court agreed that ... the total sentence imposed would be 15 years." *Id.,* 583 A.2d at 712. After the court imposed a sentence of 15 years for each conviction, the sentences to run concurrently, Dotson sought panel review. *Id.* at 520, 583 A.2d at 712. The review panel "vacated the sentence ... and imposed a sentence of 15 years on each conviction to run consecutively rather than concurrently." *Id.* at 521, 583 A.2d at 713.

It was in that context that we held illegal the sentence imposed by the panel. *Id.* at 524, 583 A.2d at 714. The court had accepted Dotson's guilty pleas and bound itself to impose no more than 15 years. *Id.* at 524, 583 A.2d at 714. The length of sentence to which the court had bound itself became the "maximum permissible sentence" and the subsequent increase, therefore, was illegal. *Id.,* 583 A.2d at 714.

In short, we held in *Dotson* that, although generally the legislature determines the maximum sentence allowable by law, once a judge accepts a plea agreement, "the judge [is] required under the dictate of Rule 4–243(c)(3) to embody in the judgment the agreed sentence." *Id.* at 523, 583 A.2d at 714. Pertinent here, we emphasized in *Dotson* that, because the Maryland Rules "have the force of law," the maximum sentence "allowable by law" was dictated by the plea agreement. *Id.* at 523, 583 A.2d at 714. We concluded that "[Dotson's] plea agreement fixed the maximum sentence allowable by law" and, because a review panel thereafter im-

posed a sentence in excess of the plea agreement, the sentence was illegal. *Id.* at 524, 583 A.2d at 714. As explained *supra,* that *Dotson* arrived in this Court via an appeal of the sentence imposed by a panel review, as opposed to a Rule 4–345(a) motion, does not undermine the applicability of its holding to the latter context.

 We repeat what at this point should be self-evident: whether a sentence illegality is cognizable under Rule 4–345(a) depends *solely* on whether the illegality inheres in the sentence itself, and *not* on the timing of the claim of illegality or the procedural posture of the case. If the sentence is inherently illegal, then correction of the illegality can be done by way of a motion brought pursuant to Rule 4–345(a). And, again to be clear, a sentence imposed in violation of the maximum sentence identified in a binding plea agreement and thereby "fixed" by that agreement as "the maximum sentence allowable by law," is, as we held in *Dotson,* an inherently illegal sentence. 321 Md. at 524, 583 A.2d at 714.

Before leaving our discussion of this issue, we address the State's concern regarding the finality of conviction, despite precedent recognizing that Rule 4–345(a) creates an exception to finality. *See State v. Griffiths,* 338 Md. 485, 496, 659 A.2d 876, 882 (1995) ("This Rule [4–345(a) ] creates a limited exception to the general rule of finality, and sanctions a method of opening a judgment otherwise final and beyond the reach of the court."). The State argues that permitting a Rule 4–345(a) challenge to a sentence imposed allegedly in excess of a plea agreement "runs afoul of the principles of 'finality and cloture' " (quoting *Matthews,* 197 Md.App. at 375, 13 A.3d at 840), because "a claim by the defendant is the exclusive trigger for consideration of whether a sentence violates the terms of a plea agreement." This is so, the State asserts, because,

> unlike where a sentence is illegal because it is in excess of that allowed by statute, or where it is cruel or unusual, or where one should not have been imposed at all, all of which are transparent and obvious claims ... only a defendant

knows whether he or she has been sentenced in conformity with what he objectively and reasonably believed to be the terms of his plea agreement.

(Citation omitted).

This assertion by the State reveals a misreading of *Cuffley*. What a defendant "reasonably believe[s]" to be the maximum sentence bargained for and to which the court agreed to be bound is ascertained by application of an objective test. We explained in *Cuffley:*

The test for determining what the defendant reasonably understood at the time of the plea is an objective one. *It depends not on what the defendant actually understood the agreement to mean*, but rather, on what a reasonable lay person in the defendant's position and unaware of the niceties of sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding.

416 Md. at 582, 7 A.3d at 565 (emphasis added).

### III.

It remains for us to consider whether the record of Petitioner's plea hearing demonstrates that the trial court bound itself to the agreement, and, if so, whether the agreement allowed the court to impose a suspended sentence in excess of the upper limit of the guidelines, forty-three years. We make an independent determination of whether the trial court breached the terms of Petitioner's plea agreement. *See Cuffley*, 416 Md. at 581, 7 A.3d at 564. We do that by resort solely to the record of the plea hearing:

[A]ny question that later arises concerning the meaning of the sentencing term of a binding plea agreement must be resolved by resort *solely* to the record established at the Rule 4–243 plea proceeding. The record of that proceeding must be examined to ascertain precisely what was presented to the court, in the defendant's presence and before the court accepts the agreement, to determine what the defen-

dant reasonably understood to be the sentence the parties negotiated and the court agreed to impose. *Id.* at 582, 7 A.3d at 565. And, as we have mentioned, "[t]he test for determining what the defendant reasonably understood at the time of the plea is an objective one," dependent "not on what the defendant actually understood the agreement to mean, but rather, on what a reasonable lay person in the defendant's position and unaware of the niceties of sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding." *Id.* at 582, 7 A.3d at 565.

Petitioner asserts that a reasonable defendant would have understood the trial court's agreement to "cap" the sentence to mean that the trial court had bound itself to a maximum total sentence at the upper limit of the guidelines, forty-three years. The State counters that the trial court only bound itself to "forty-three years to be served," and any suspended portion of the sentence remained within the trial court's authority. This is evident, the State asserts, from the trial court's advisement to Petitioner that "theoretically I can give you anything from the mandatory minimum . . . up to the maximum of life imprisonment."

The following colloquy took place at Petitioner's plea hearing on December 3, 2003:

STATE'S ATTORNEY: . . . There have been plea negotiations in case ending in 2799 which are as follows: The State is going to call count one of the criminal information charging this defendant with attempted first-degree murder of Christine Davis, count five charging the Defendant with first-degree assault of Leroy Jackson, count six charging the Defendant with first-degree assault of Marvin Davis, and count eleven charging this defendant with unlawful use of a handgun in the commission of a crime of violence.

The Defendant will tender a guilty plea to each of those counts. In return for the Defendant's guilty pleas, the State, upon a finding of guilt, has agreed to enter a nol pros . . . as to the balance of all remaining counts. **At disposi-**

tion, your Honor, the State is going to be arguing for incarceration within the—to the top of the guidelines range.

The guidelines range is twenty-three to forty-three years.

The State is going to be asking for incarceration of forty-three years. Defense counsel is free to argue for whatever disposition they deem appropriate. That cap is a cap as to actual and immediate incarceration at the time of initial disposition.

Prior to disposition, the State and the Defense are asking the Court to order a presentence investigation, to order a presentence psychiatric report, and to schedule the matter for approximately one-half day so testimony and argument may be presented to the Court at the appropriate time.

THE COURT: [Defense Counsel] is that your understanding as well?

[Defense Counsel]: Yes, it is.

[Defense Counsel]: Yes, sir.

And you understand that, Mr. Matthews; is that correct, sir?

THE DEFENDANT: Correct.

\* \* \*

THE COURT: You are entering a guilty plea to the first count of attempted first-degree murder, that carries up to life imprisonment; count five, first-degree assault, carries up to twenty years; count six, first-degree assault, that carries up to twenty-five years; count eleven, use of a handgun in a crime of violence, that carries twenty years with a mandatory minimum of five without parole.

Your guidelines are twenty-three to forty-three years. The State is asking for a sentence of forty-three years to be served. The Court has agreed to cap any sentence and your defense attorneys are free to argue. And theoretically I can give you anything from the mandatory minimum on the one count, which is five years

without parole, up to the maximum of life imprisonment.

Do you understand what the plea agreement is?

THE DEFENDANT: Yes, sir.

(Emphasis added.) The Court questioned Petitioner, satisfied itself that the pleas were "knowingly, voluntarily and intelligently given," and accepted Petitioner's plea.

In both *Cuffley* and *Baines,* filed on the same day, we considered whether a defendant reasonably would understand a sentence "within the guidelines," with no further explication, to mean that the trial court had bound itself to impose a total sentence that would include both the non-suspended and suspended, if any, portions. 416 Md. at 585–86, 7 A.3d at 567, 416 Md. at 620, 7 A.3d at 588. We concluded that the record of the plea hearing in each of those cases plainly supported that a reasonable lay defendant would not have understood the agreement to allow the trial court to impose a suspended sentence beyond the upper limit of the guidelines range. *Cuffley,* 416 Md. at 585–86, 7 A.3d at 567, *Baines,* 416 Md. at 620, 7 A.3d at 588. In both cases, we further concluded that, even if the sentencing terms, as expressed at the plea hearings, were ambiguous, the ambiguities must be resolved in the defendants' favor. *Cuffley,* 416 Md. at 586, 7 A.3d at 567; *Baines,* 416 Md. at 620, 7 A.3d at 588.

The State and Petitioner agree that the court bound itself to the agreed-upon sentencing "cap," but they disagree about what was contemplated by the cap. The State argues that the court agreed only to cap the sentence at forty-three years of executed time, excluding any suspended time. Petitioner argues that there is some ambiguity in that regard and, by application of our decisions in *Cuffley* and *Baines,* any ambiguity must be resolved in Petitioner's favor. For the reasons that follow, we agree that the record of the plea hearing is ambiguous on this point and the ambiguity must be resolved in favor of Petitioner.

The State said that it "would be arguing within the—to the top of the guidelines range," and "[t]he guidelines range is

twenty-to forty-three years." The State also said that it would be arguing for incarceration of forty-three years, and the "cap is a cap as to actual and immediate incarceration at the time of initial disposition." The court then added: "Your guidelines are twenty-three to forty-three years. The State is asking for a sentence of forty-three years to be served. The Court has agreed to cap any sentence and your defense attorneys are free to argue. And theoretically I can give you anything from the mandatory minimum on the one count, which is five years without parole, up to the maximum of life imprisonment."

The State's averments that it would "be arguing to the top of the guidelines range," "be asking for incarceration of forty-three years," and "that cap is a cap as to actual and immediate incarceration" may well have been clear to the State, defense counsel and the court. But the record of the plea hearing does not persuade us that Petitioner "reasonably understood" (as that phrase is explicated in *Cuffley* ) the maximum agreed-upon sentence to be. No one mentioned, much less explained to Petitioner on the record, that a sentence greater than the forty-three year "cap" could be imposed, with a suspended portion of the sentence in excess of those forty-three years. Neither did the State, defense counsel, or the court explain for the record that the words "guidelines range" referred solely to executed time. We grant the possibility that a lay defendant might reasonably understand the phrase "actual and immediate incarceration" to include only the non-suspended portion of a sentence because a defendant might never serve the suspended portion. Yet, it is also possible that a lay defendant who, as in the case at bar, has just heard the State inform the court that it would be "asking for incarceration within the guidelines" might reasonably understand the State to be referring to the total years of incarceration to which the defendant would be exposed, including any suspended portion.

The trial court's statements concerning the sentence cap embodied in the agreement, when viewed through the prism of the objectively reasonable lay defendant, did not resolve the ambiguity. The court, after "agreeing to cap any sentence,"

explained to Petitioner that "theoretically I can give you anything from the mandatory minimum on the one count, which is five years without parole, up to the maximum of life imprisonment." The court did not explain that the cap to which it agreed to be bound concerned only a non-suspended portion of the sentence. And the court's explanation of what "theoretically" could be imposed as the sentence did not add clarity to the court's statement that it would agree to the cap. If anything, the court's mention of the "theoretical[ ]" maximum sentence of life imprisonment, without clarification of the context in which that theoretical sentence was being mentioned, more likely confused further what already was unclear.

We are left to conclude that the sentencing term of Petitioner's plea agreement, as placed on the record at the plea hearing, is ambiguous. The ambiguity, moreover, is reflected in the ruling of the postconviction judge. That judge determined that the prosecutor had breached the plea agreement because he had agreed to "incarceration of forty-three years," but at sentencing argued for a sentence of life, suspend all but forty-three years. The postconviction judge's view of the sentencing term of the plea agreement supports our conclusion that a reasonable lay defendant in Petitioner's place would not have clearly understood what was contemplated by the agreed-upon sentence of "incarceration of forty-three years."

The ambiguity we discern in the sentencing term of the plea agreement must be resolved in Petitioner's favor. Therefore, Petitioner is entitled to have the plea agreement enforced, based on the terms as he reasonably understood them to be: a maximum sentence, including any suspended portion, of forty-three years. The sentence he received at re-sentencing following the grant of postconviction relief exceeded that agreed-upon term, creating a substantive illegality that inheres in the sentence. We correct that illegality by directing vacatur of the sentence and remand of the case for a new sentencing proceeding. We agree with Petitioner that, at the resentencing proceeding, the court is bound not to exceed a total

sentence of 43 years, with all but 30 years suspended.[5] *See* Md.Code (1974, 2006 Rep. Vol.), § 12-702(b) of the Courts & Judicial Proceedings Article

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE SENTENCE AND REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR RE-SENTENCING CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.**

HARRELL and ADKINS, JJ., dissent.

HARRELL, J., dissenting, in which ADKINS, J., joins.

I dissent, for the same reasons explained in my dissents in *Cuffley v. State*, 416 Md. 568, 587-602, 7 A.3d 557, 568-577 (2010); and *Baines v. State*, 416 Md. 604, 621-28, 7 A.3d 578, 588-592 (2010). By marking the present case thusly, I hope that, when a future Court majority gets around to undoing the mischief of *Cuffley* and *Baines,* it will take-down the majority opinion in the present case as well.

Judge ADKINS authorizes me to state that she joins the views expressed here.

---

**5.** We deny Petitioner's request that the re-sentencing be conducted before someone other than the original sentencing judge.