*Bashawn Montgomery Ray v. State of Maryland*, No. 81, September Term, 2016. Opinion by Hotten, J.

**CRIMINAL LAW — SENTENCING AGREEMENT:**

Petitioner's agreement with the State provided that he would be subject to a "[c]ap of four years on any executed incarceration." Petitioner was sentenced to ten years' incarceration with six years suspended and four years' probation. Petitioner argued that the circuit court's sentence exceeded the cap bargained for as a condition of his plea of not guilty on an agreed statement of facts because he received suspended time and probation, in addition to incarceration for up to four years. The Court of Appeals determined that the plain language of the disputed provision of the agreement was clear and unambiguous. It was unreasonable to interpret the plain language of the agreement to prohibit the imposition of a suspended sentence.

The Court assumed *arguendo* that the plain language of the disputed provision was ambiguous. The Court of Appeals looked to how a reasonable person in Petitioner's position would have understood the agreement, based on the record developed at the hearing at which Petitioner pleaded not guilty on an agreed statement of facts. The record demonstrated that Petitioner had been informed that he could be subject to a maximum sentence of ten-and-a-half years. Thus, a reasonable person in Petitioner's position would have understood that there could be an additional, but unexecuted, period of incarceration imposed in his or her sentence.

Circuit Court for Montgomery County
Case No. 116959
Argued: May 4, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 81

September Term, 2016

_____

BASHAWN MONTGOMERY RAY

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: July 28, 2017

Petitioner, Bashawn Montgomery Ray, pleaded not guilty to conspiracy to commit theft and making a false statement to the police at a hearing based on an agreed statement of facts, and was thereafter sentenced to ten years' incarceration with six years suspended and four years' probation. He argues that the circuit court imposed an illegal sentence after it bound itself to a "[c]ap of four years on any executed incarceration." Petitioner contends that a reasonable lay person in his position would not have understood the agreement's cap to mean that the circuit court could have imposed a suspended sentence and probation in addition to incarceration for up to four years. We affirm the judgment of the Court of Special Appeals, holding that the plain language of the cap was clear and unambiguous, and thus, Petitioner's sentence was legal.

### FACTS AND LEGAL PROCEEDINGS

Petitioner was charged by indictment in the Circuit Court for Montgomery County with conspiracy to commit theft of property with a value over $1,000, theft scheme, identity fraud, and making a false statement to the police. After the denial of his motion to suppress evidence, Petitioner and the State entered into the following agreement: Petitioner would proceed by way of a plea of not guilty with an agreed statement of facts on the conspiracy and false statement charges, and the State would enter the remaining counts as *nolle prosequi*. This agreement was written, signed by the prosecutor and Petitioner's attorney, and submitted to the circuit court's Assignment Office, in the form of an agreement memorandum. The memorandum contained the following terms:

> The defendant agrees to proceed by way of an agreed statement of facts on count one, amended to allege conspiracy to commit theft of property having

a value at least $1,000 but less than $10,000 and on count four, alleging false statement when under arrest.

**Cap of four years on any executed incarceration.**

Judg[]ments of restitution totaling $8,377 will be entered as part of the sentence, not merely as a term of probation.

The State will enter nolle prosequi as to counts two and three at sentencing.

The State will defer to the Court as to the defendant's bond status between the date of the trial and the date of sentencing.

The defendant will waive his right under Maryland Rule 4-345(e) to request modification of his sentence.

(Emphasis added).

In addition to the agreement memorandum, the record reflects a form entitled "GUILTY PLEA – VOIR DIRE[.]" We recognize that the form's title is inaccurate—Petitioner did not enter a guilty plea. This form was characterized at the hearing at which Petitioner pleaded not guilty on an agreed statement of facts as an "advice of rights form[.]" At the hearing, Petitioner's counsel stated "I have crossed out a number of items" on the form "that deal with the appeal issues because [Petitioner] would maintain his appeal rights[.]" The form, signed by Petitioner and his counsel, outlines the elements of the conspiracy and false statement counts, and states that "[t]he maximum penalty for the offense you are offering to plead guilty is: 10 years + 6 months[.]"

The hearing at which Petitioner pleaded not guilty on an agreed statement of facts, and the subsequent trial, were held on April 18, 2011. The circuit court read into the record the terms of the agreement:

THE COURT: The terms of the plea are that [Petitioner] agrees to proceed by way of an agreed statement of facts on Count 1, amended to allege conspiracy to commit theft of property having a value of at least $1,000 but less than $10,000.

And on Count 4, alleging false statement when under arrest. There's a cap of four years [on executed[1]] incarceration. The State will enter a nolle prosequi to Counts 2 and 3 at sentencing, and the State will defer to the Court as to defendant's bond status between the date of trial and the date of sentencing.

The defendant will waive any right under Maryland [R]ule 4-345(e) to request a modification of his sentence.

Are those the complete terms of the agreement?

[DEFENSE COUNSEL]: They are, Your Honor. Mr. Montgomery, understanding those terms of the agreement –

Are those the terms of the plea agreement that you and I discussed?

[PETITIONER]: Yes. What was it about the bond issue?

[DEFENSE COUNSEL]: The bond is that the State's not going to be asking to have your bond revoked –

* * *

THE COURT: Whether you stay out of jail between now and the time you get sentenced or not, the State is not going to request that you be locked up while you're waiting for sentencing, okay?

[THE STATE]: That's correct.

---

[1] Petitioner notes that the original transcript read "cap of four years un-executed incarceration." After the transcription services company issued a correction, Petitioner's counsel filed a motion to correct the record in the Court of Special Appeals. As the Court of Special Appeals noted: "The court reporter made an obvious error in transcription and wrote 'un-executed incarceration' instead of 'on executed incarceration.' All parties were in absolute agreement that the judge said 'on executed incarceration,' exactly as it was written in the formal Memorandum." *Ray v. State*, 230 Md. App. 157, 192 n.4, 146 A.3d 1157, 1177 n.4 (2016).

[PETITIONER]:  Yes, sir.

THE COURT:  All right.

The State then read into the record the agreed statement of facts, and the circuit court found

Petitioner guilty of conspiracy to commit theft and making a false statement while under

arrest.

The parties appeared before the circuit court for sentencing on August 11, 2011.

The State repeated the facts of the case and reminded the judge of the parties' agreement:

"In this case, Your Honor agreed to a cap of four years of any executed incarceration."

The circuit court imposed the following sentence:

> Now, on the first count, conspiracy to commit theft, the Court will impose a sentence of 10 years to the Maryland Department of Corrections; I'll suspend all but four years and that will be concurrent with the sentence in the Hagerstown case.[2]

> Now, with the false statement . . . , the Court will impose a sentence of six months, which is the maximum sentence in that particular case, and that will be concurrent with the sentence in Count 1.

> Upon release, [Petitioner] will be on a period of probation of four years supervised probation.

On March 23, 2015, Petitioner filed a motion to correct illegal sentence, contending

that the sentence exceeded the maximum sentence authorized by the agreement.  Petitioner

contended that he, or a reasonable lay person in his position, would have understood the

agreement was limited to a maximum total sentence of four years, not suspended time and

---

[2] The circuit court was referring to a sentence that Petitioner received in an unrelated case in the Circuit Court for Washington County.

- 4 -

probation in addition to a four-year term of incarceration. The State filed a motion in opposition, asserting that the sentence imposed by the circuit court was "in accordance with the plain terms" of the agreement. The State noted that the four-year cap was qualified by the term "executed[,]" and Petitioner had been advised of the maximum penalty of ten years for the conspiracy count. On July 24, 2015, the circuit court denied the motion without a hearing or a written opinion.

Petitioner appealed the denial of his motion to correct illegal sentence to the Court of Special Appeals. He argued that his sentence was illegal because a reasonable lay person in his position would not have understood that he could have received a total sentence in excess of four years. Petitioner further contended that the only potential term of incarceration mentioned in the agreement and by the parties was the cap on "executed incarceration[,]" without mention of an additional period of suspended punishment and probation. The State countered that Petitioner's sentence was legal because the agreement expressed a four-year cap on *executed* incarceration. Further, the State contended that Petitioner understood that there could be an additional, but unexecuted, portion imposed in his sentence because Petitioner had been advised that he was subject to a maximum sentence of ten-and-a-half years.

In a reported opinion, the Court of Special Appeals affirmed the denial of Petitioner's motion to correct illegal sentence. *Ray v. State*, 230 Md. App. 157, 146 A.3d 1157 (2016). The court held that the meaning of a "[c]ap of four years on any executed incarceration" is clear and unambiguous. The Court of Special Appeals determined there was "no ambiguity in the critical terms of the plea bargain[.]" *Id*. at 187, 146 A.3d at 1174.

Thus, the court held that it was not necessary to consider "what a reasonable lay person in [Petitioner's] position and unaware of the niceties of sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding." *See id*. at 187–189, 146 A.3d at 1174–75 (quoting *Cuffley v. State*, 416 Md. 568, 582, 7 A.3d 557, 565 (2010)). Moreover, the intermediate appellate court went on to consider, only for the purposes of argument, "that the term 'executed incarceration'" was ambiguous. *Id*. at 187, 146 A.3d at 1174. The court concluded a reasonable person in Petitioner's position, unaware of the niceties of sentencing law, would have understood the meaning of "executed incarceration." *Id*. at 187–94, 146 A.3d at 1174–78.

We granted Petitioner's petition for writ of certiorari, *Ray v. State*, 451 Md. 249, 152 A.3d 753 (2017), to consider the following questions:

> 1.      Under this Court's decisions in *Cuffley v. State*, 416 Md. 568[,7 A.3d 557] (2010), and *Baines v. State*, 416 Md. 604[, 7 A.3d 578] (2010), which require that a plea agreement be construed according to what a reasonable lay person in [Petitioner's] position, unaware of the niceties of sentencing law, would understand it to mean, would a reasonable lay person understand "a cap of four years on executed incarceration" to mean that the court could impose suspended time in addition to a four-year term of non-suspended incarceration?

> 2.      Where the circuit court bound itself to a "cap of four years on executed incarceration," but the term "executed" was never explained to Petitioner and he was never informed that the court could impose suspended time in addition to incarceration for up to four years, and the court sentenced him to ten years' incarceration, with six years suspended, is the sentence imposed on Petitioner illegal?

- 6 -

## DISCUSSION

### Parties' Contentions

Petitioner maintains that under the agreement with the State, which the circuit court approved, Petitioner was entitled to a maximum total sentence not exceeding four years. The circuit court sentenced Petitioner to ten years' incarceration, with six years suspended, and four years of probation. Thus, Petitioner urges that the circuit court exceeded the maximum sentence authorized by the agreement, thereby imposing an illegal sentence.

In response, the State argues that the circuit court sentenced Petitioner within the terms and sentencing cap of Petitioner's negotiated agreement, as the executed portion of Petitioner's sentence was capped at four years. The State contends that the Court of Special Appeals correctly determined that Petitioner's agreement was clear and unequivocal, and the sentence imposed by the circuit court fully complied with that agreement.

### Standard of Review

If a trial court approves an agreement reached by the parties, "the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement . . . ." Md. Rule 4-243(c)(3); *see also Dotson v. State*, 321 Md. 515, 523, 583 A.2d 710, 714 (1991) ("When the judge accepted the pleas, the agreement as to punishment came into full bloom; it stood approved by the judge. Thereafter, the agreement was inviolate, and the judge was required under the dictate of Rule 4-243(c)(3) to embody in the judgment the agreed sentence."). Maryland Rule 4-345(a) provides: "The court may correct an illegal sentence at any time." The illegality must be inherent in the sentence. *See, e.g., Tshiwala v. State*, 424 Md. 612, 619, 37 A.3d

308, 312 (2012) ("[W]here the sentence imposed is not inherently illegal, and where the matter complained of is a procedural error, the complaint does not concern an illegal sentence for purposes of Rule 4–345(a)."). This Court has held that "a sentence imposed in violation of the maximum sentence identified in a binding plea agreement and thereby 'fixed' by that agreement as 'the maximum sentence allowable by law,' is . . . an inherently illegal sentence[,]" and is cognizable under Maryland Rule 4-345(a). *Matthews v. State*, 424 Md. 503, 519, 36 A.3d 499, 508 (2012) (quoting *Dotson*, 321 Md. at 524, 583 A.2d at 714).

"Whether a trial court has violated the terms of a plea agreement is a question of law, which we review de novo." *Cuffley*, 416 Md. at 581, 7 A.3d 557. Interpretation of an agreement as to sentencing, including the question of whether the agreement's language is ambiguous, is a question of law, subject to *de novo* review. *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007); *cf. Towson v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004) ("The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law, subject to *de novo* review.").

## The *Cuffley* Trilogy

In support of the claim that his sentence was illegal, Petitioner points us to our decisions in *Cuffley v. State*, 416 Md. 568, 7 A.3d 557 (2010); *Baines v. State*, 416 Md. 604, 7 A.3d 578 (2010); and *Matthews v. State*, 424 Md. 503, 36 A.3d 499 (2012). Here, our brethren on the Court of Special Appeals coined these cases as the *Cuffley* Trilogy:

> The promulgation of the Cuffley Trilogy was truly a watershed. The Trilogy vastly expanded the potential for legitimate Rule 4-345(a) challenges. Construing the meaning of a plea bargain, moreover, is a far more

complicated and ad hoc exercise than was ever the construing of a statute in the simpler pre-Cuffley era. Rule 4-345(a) has taken on a much larger life and Maryland law is still adjusting to it.

*Ray v. State*, 230 Md. App. 157, 174, 146 A.3d 1157, 1167 (2016). Reflection on the *Cuffley* Trilogy provides the background for our clarification of the law governing plea agreement interpretation.

In *Cuffley*, we decided that a sentence of fifteen years' incarceration, with all but six years of that term suspended in favor of five years' probation, was illegal where the defendant pleaded guilty pursuant to a binding plea agreement that called for a sentence within the Sentencing Guidelines range of four to eight years' incarceration. 416 Md. at 577, 7 A.3d at 562. During the plea proceeding, the prosecutor advised the court that the agreement called for a "sentence within the guidelines[,]" which was "four to eight years." *Id*. at 584, 7 A.3d at 566–67. "Defense counsel added nothing to explain further what the parties meant by that sentencing term." *Id*. at 585, 7 A.3d at 567. The court then stated its understanding of the agreement: "The plea agreement, as I understand it, is that I will impose a sentence somewhere within the guidelines. The guidelines in this case are four to eight years. Any conditions of probation are entirely within my discretion." *Id*. at 585, 7 A.3d at 567. The circuit court subsequently sentenced Cuffley to "15 years at the Department of Correction, all but six years suspended, consecutive to the sentence imposed by [the judge who presided over the violation of probation]. Upon release the defendant will be placed on a period of probation for five years [with a number of special conditions]." *Id*. at 574, 7 A.3d at 560. We recognized that the circuit court violated the plea agreement by imposing a sentence that exceeded a total of eight years' incarceration:

- 9 -

> No mention was made at any time during that proceeding-much less before the court agreed to be bound by the agreement and accepted Petitioner's plea-that the four-to-eight-year sentence referred to executed time only. Neither counsel nor the court stated that the court could impose a sentence of more than eight years' incarceration that would include no more than eight years of actual incarceration, with the remainder suspended. Based on this record, a reasonable lay person in Petitioner's position would not understand that the court could impose the sentence it did.

*Id*. at 585, 7 A.3d at 567 (footnote omitted). We thus held that Cuffley was entitled to have his sentence corrected to conform to what he bargained for, *i.e.*, a total sentence of no more than eight years, a portion of which could be suspended in the court's discretion. *Id*.

*Baines*, filed on the same day as *Cuffley*, also considered "whether a judge who agrees to be bound to the terms of a plea agreement that calls for a sentence 'within the guidelines' may impose a 'split sentence' that exceeds the guidelines and suspends all but the part of the sentence that falls within the guidelines." 416 Md. at 607, 7 A.3d at 580. The State and Baines negotiated a plea agreement, accepted by the circuit court, which called for him to plead guilty to two counts of armed robbery, in exchange for "sentencing within the guidelines[.]" *Id*. The guidelines range was seven to thirteen years. *Id*. The court sentenced Baines on the first count to twenty years' incarceration, all but seven years suspended, and on the second count to a consecutive twenty years, all but six years suspended, followed by five years of probation. *Id*. We noted that "[t]here was no indication, much less *a plain statement*, that the court, consistent with the agreement, was free to impose a sentence beyond the guidelines so long as the court suspended all but the part of the sentence that was within the guidelines." Thus, the sentence was in breach of the plea agreement. *Id*. at 620, 416 Md. at 588.

In *Matthews*, the defendant pleaded guilty to attempted first-degree murder, two counts of first-degree assault, and use of a handgun in the commission of a felony. 424 Md. at 506–07, 36 A.3d at 501. At the plea proceeding, the prosecutor advised the court that, in exchange for Matthews' plea, the State would enter a *nolle prosequi* as to the remaining counts in that case (and the charges in a related case) and would argue "for incarceration within the – to the top of the guidelines range . . .[,] twenty-three to forty-three years[,]" and "be asking for incarceration of forty-three years. . . . That cap is a cap as to actual and immediate incarceration at the time of initial disposition." *Id*. at 507, 36 A.3d at 501. Before accepting Matthews' guilty plea, the court told him that "[y]our guidelines are twenty-three to forty-three years[,]" that "[t]he [c]ourt has agreed to cap any sentence and your defense attorneys are free to argue[,]" and that "theoretically I can give you anything from the mandatory minimum on the one count, which is five years without parole, up to the maximum of life imprisonment." *Id*. at 522–23, 36 A.3d at 510–11. At sentencing, the State asked for imposition of a life sentence with all but forty-three years suspended. *Id*. at 507, 36 A.3d at 501. The court sentenced Matthews to a "total sentence of life imprisonment, with thirty years of it as executed time." *Id*. at 507, 36 A.3d at 501–02. Matthews challenged that the sentence imposed was illegal because it exceeded the sentencing cap to which the trial court agreed to be bound. *Id*. at 506, 36 A.3d at 501. The State rebutted that the circuit court agreed only to cap the sentence at forty-three years of executed time, excluding any suspended time. *Id*. at 523, 36 A.3d at 511. We rejected that argument and agreed with Matthews that "the record of the plea hearing is ambiguous on this point and the ambiguity must be resolved in favor of [Matthews]." *Id*.

**Agreement Interpretation**

Plea bargains are similar to contracts. *See, e.g.*, *Hartman*, 452 Md. 279, 289, 156 A.3d 886, 892 (2017). Thus, when interpreting plea agreements, courts draw upon contract law as a guide to ensure that each party receives the benefit of the bargain. We recognize that plea agreements, of course, involve more than contract rights. Accordingly, exclusive application of contract law is inappropriate because "[d]ue process concerns for fairness and the adequacy of procedural safeguards guide any interpretation of a court approved plea agreement." *Solorzano v. State*, 397 Md. 661, 668, 919 A.2d 652, 656 (2007).

Here, the Court of Special Appeals recognized the need for clarification regarding the application of contract law to plea agreements:

> Between the plea bargain and the contract there is an enigmatic attraction-but-rejection relationship. In these "yes, but" discussions the reader is very much left at sea. Shall we swim to the shore—or back to the ship? This indeterminate status of principles of contract interpretation can create a troubled middle ground when it comes to applying the principles to a given plea agreement. In terms of sometimes lacking analytic balance on the subject, appellate opinions themselves have not been without sin. Those opinions holding a defendant not bound by the arguably binding terms of his plea agreement stress the dissimilarities between the two contexts and tend to ignore totally the similarities that might cut the other way. Conversely, the opinions holding a defendant bound by the terms of the plea agreement stress the similarities between the two contexts and tend to ignore the dissimilarities. *What is desperately needed is the appreciation that 1) the construing of a plea agreement is not, to be sure, slavishly controlled by contract principles but that 2) contract principles may nonetheless control a given outcome and may not be blithely repudiated or ignored.*

*Ray*, 230 Md. App. at 182, 146 A.3d at 1171 (emphasis added). Here, we clarify the relationship between plea agreement interpretation and contract law.

First, we must determine whether the plain language of the agreement is clear and unambiguous as a matter of law. If the plain language of the agreement is clear and unambiguous, then further interpretive tools are unnecessary, and we enforce the agreement accordingly. *See Jordan*, 509 F.3d at 195; *Brendsel v. Winchester Constr. Co., Inc.*, 392 Md. 601, 624, 898 A.2d 472 (2006) ("Only when the language of the contract is ambiguous will we look to extraneous sources for the contract's meaning.").[3] Second, if the plain language of the agreement is ambiguous, we must determine what a reasonable lay person in the defendant's position would understand the agreed-upon sentence to be, based on the record developed at the plea proceeding. *See Cuffley*, 416 Md. at 582, 7 A.3d at 565-66. "[I]f examination of the terms of the plea agreement itself, by reference to what was presented on the record at the plea proceeding before the defendant pleads guilty, reveals what the defendant reasonably understood to be the terms of the agreement, then that determination governs the agreement." *Baines*, 416 Md. at 615, 7 A.3d at 585. Third, if, after we have examined the agreement and plea proceeding record, we still find ambiguity regarding what the defendant reasonably understood to be the terms of the

---

[3] Here, we clarify a threshold layer of plea agreement interpretation jurisprudence—if the plain language of the disputed provision of the plea agreement is clear and unambiguous, then further interpretive tools are unnecessary, and we enforce the agreement accordingly. This is not inconsistent with our recent decision in *Smith v. State*, __ Md. __, __ A.2d __, Slip Op. (2017), in which we held that no reasonable lay person in the defendant's position could have reasonably expected a sentence below the minimum set by the binding plea agreement, based on the record developed at the plea proceeding. *See id.* at 18–19.

agreement, then the ambiguity should be construed in favor of the defendant. *See* *Solorzano*, 397 Md. at 673, 919 A.2d at 659.

### The Plain Language of the Agreement's Sentencing Cap Was Clear and Unambiguous

We determine *de novo* whether the plain language of the disputed provision in the agreement is ambiguous. Where the plain language of a disputed provision of an agreement is clear and unambiguous, we give effect to its meaning, and there is no need to look elsewhere to determine the provision's meaning. Here, the disputed provision of the agreement contains the language "[c]ap of four years on any executed incarceration." We agree with the Court of Special Appeals that the plain language of this provision is clear and unambiguous:

> We hold that the meaning of those words is perspicaciously clear and unambiguous. They mean four years to be served in jail. They mean four years of "hard time." They make no reference whatsoever to any suspended sentence and, indeed, distinguished themselves from it.

*Ray*, 230 Md. App. at 186, 146 A.3d at 1173. Further, it is unreasonable to interpret the plain language of the agreement as prohibiting a *total* sentence beyond the cap specifically imposed on *executed* incarceration.

The Court of Special Appeals provided sage analysis regarding why a specific sentencing cap on "executed incarceration[]" is unambiguous, while a non-specific cap is ambiguous:

> The perennial flaw with most non-specific sentencing caps imposed on split sentences is that the ostensibly limiting cap provision does not indicate which part of a split sentence is being capped. A non-specific cap leaves open the possibility that the entire sentence (the unsuspended and the suspended

portions alike) is being capped rather than that only the "hard time" is being capped.

*Id.* at 186, 146 A.3d at 1173. All three cases in the *Cuffley* Trilogy provided for a non-specific cap on the sentence, generally. In all three cases, there was no express indication as to whether the cap was upon the executed portion of the sentence, or on the total sentence. We agree with the Court of Special Appeals that the sentencing caps in the *Cuffley* Trilogy of cases "were accordingly ambiguous by definition." *Id.* at 186, 146 A.3d at 1174. Furthermore, we emphasize the Court of Special Appeals' distinguishing of *Cuffley*:

> There is even a suggestion in Cuffley, 424 Md. at 524, 36 A.3d [at 512], that an adjective (past participle) such as "executed" is exactly what the plea bargain in that case needed to dissipate any possible ambiguity:
>
>> "Neither did the State, defense counsel, or the Court explain for the record that the words 'guideline range' referred solely to executed time."

*Ray*, 230 Md. App. at 187, 146 A.3d at 1174 (quoting *Cuffley*, 424 Md. at 524, 36 A.3d at 512). Here, unlike in *Cuffley*, the agreement expressly provided that the sentencing cap was to be imposed on executed time. The plain language of the disputed provision of the agreement was clear and unambiguous. It is thus unnecessary to look elsewhere to determine the provision's meaning. *See Jordan*, 509 F.3d at 195; *Brendsel v. Winchester Constr. Co., Inc.*, 392 Md. at 624, 898 at 472.

### When Further Tools of Interpretation Are Necessary

The plain language of the agreed-upon sentencing cap was clear and unambiguous. Further, we agree with the Court of Special Appeals that even assuming *arguendo* that the

plain language of the disputed provision was ambiguous, the Petitioner would still not prevail. If the plain language of the disputed provision of the agreement is ambiguous, then we conduct a test to determine what a defendant reasonably understood at the time of his plea. We described this test in *Cuffley*:

> The test for determining what the defendant reasonably understood at the time of the plea is an objective one. It depends not on what the defendant actually understood the agreement to mean, but rather, on what a reasonable lay person in the defendant's position and unaware of the niceties of the sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding. It is for this reason that extrinsic evidence of what the defendant's actual understanding might have been is irrelevant to the inquiry.

416 Md. at 582, 7 A.3d 565–66 (footnote omitted).

The record contains a form entitled "GUILTY PLEA – VOIR DIRE[.]" As we have noted, this form's title is inaccurate, as Petitioner did not enter a guilty plea. Accordingly, this form was characterized at the April 18, 2011 hearing, at which Petitioner's plea was entered, as an "advice of rights form[.]" At the hearing, Petitioner's counsel stated "I have crossed out a number of items" on the form "that deal with the appeal issues because [Petitioner] would maintain his appeal rights[.]" The form was signed by Petitioner and his counsel, set out the elements of the conspiracy and false statement counts, and informed Petitioner of the maximum statutory penalty: "10 years + 6 months[.]" We determine that because Petitioner acknowledged that he was subject to a maximum sentence of ten years and six months, his argument that he did not understand that his "executed" incarceration would be limited to four years to be "carried out" or "performed," *Ray*, 230 Md. App. at 186–87, was refuted by the record. Here, it was clear, based on the maximum penalty, of

- 16 -

which Petitioner was informed, that a reasonable person in Petitioner's position would have understood that he or she could be subject to an additional but unexecuted period of incarceration imposed as a suspended sentence.

### CONCLUSION

We determined that the plain language of the disputed provision in Petitioner's agreement, "[c]ap of four years on any executed incarceration[,]" was clear and unambiguous. In addition, assuming *arguendo* that the plain language of the disputed provision was ambiguous, a reasonable person in Petitioner's position would have understood that he or she could be subject to an additional but unexecuted period of incarceration imposed as a suspended sentence.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**